8216

STATE v. MALLOY.

1. AN APPEAL FROM A CIRCUIT ORDER QUASHING AN INDICTMENT for relationship of jury commissioner to litigants presents merely an abstract question.

2. MURDER—INDICTMENT.—Where an indictment charges one defendant with the murder of two persons, and it is quashed as to one, it should be quashed as to the other.

3. INDICTMENT—JURORS.—If a county treasurer who is prosecuting a criminal case assists in making up the jury lists and in drawing the grand jury therefrom, an indictment found by such grand jury in the case so prosecuted is illegal. The rule for quashing indictments in cases of relationship of jury commissioner to litigant stated.

4. JURORS.—Where the jury lists are destroyed by fire or an irregularity occurs in the drawing or the validity thereof is questioned, the resident Circuit Judge may, five days before a term of Court, order the jury commissioners to prepare another list and to draw jurors for such term or to take steps to correct an error. In case of vacancy

by disqualification or otherwise, the county superintendent of education and sheriff may attend in place of the commissioners disqualified or absent.

Before WILSON, J., Marlboro, March, 1912. Affirmed.

Indictment against John Malloy. From order quashing indictment, State appeals on the following exceptions:

1. "His Honor erred as matter of law in holding that the fact that the defendant was under indictment for killing the son of one of the jury commissioners was a ground for challenge in this case, the deceased being no relation whatever to any one of the jury commissioners.

2. "Because his Honor abused his discretion in quashing the indictment and sustaining the challenge of the array of jurors upon the grounds stated.

3. "Because, it is respectfully submitted, that, under the present law governing the constitution of jury commissioners, the preparation and custody of the jury box and the manner of drawing jurors therefrom, there is no longer any reason for the old common law rule applicable to the jury commissioner to be applied to an individual member of the present board of jury commissioners, it being respectfully submitted even though a single member of the present board of jury commissioners might be partial, or even prejudiced, still it would be impossible under our present system for him to do any wrong, or be guilty of any official misconduct prejudicial to the rights of a litigant, without the connivance of some other member of the board of commissioners, and in the absence of any charge of actual misconduct as against the action of the jury commissioners, or a suspicion of partiality against but one, there is no longer any reason for the application of the common law rule, and his Honor erred and abused his discretion in not so holding."

*Messrs. Solicitor J. Monroe Spears, Townsend & Rogers* and *J. J. Evans,* for the appellant.

*Messrs. Stevenson, Stevenson & Prince,* contra.

May 28, 1912. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This is an appeal by the State, from an order quashing an indictment.

Upon the call of the case, and before the defendant was arraigned, his attorneys challenged the array of grand jurors, on the following grounds:

"That the said grand jury was drawn, partly in 1911 and partly in 1912, from names put in the jury box by the jury commissioners, in 1911 and 1912, respectively, and that the said jurors were placed in the said box by the jury commissioners of Marlboro county, and the said grand jurors by the jury commissioners of Marlboro county, and that the said N. B. Rogers, county treasurer for Marlboro county, and *ex officio* a jury commissioner, participated in the placing of the names in the box, and in drawing the same therefrom, and that the said N. B. Rogers, is the father of Guy Rogers, who is charged to have been killed by the same person, and at the same time with Prentiss Moore, and that he has been an active prosecutor, ever since the alleged crime was committed, in endeavoring to collect evidence, and bring about the conviction of this defendant, and that he is disqualified to act, in either placing in the box the names of the said grand jury, or in drawing the names of the jurors therefrom; and the said defendant, therefore, challenges the validity of the action of the said grand jurors, and moves to dismiss the indictment, on the grounds aforesaid."

The defendant's attorneys, at that time, also challenged the array of petit jurors, on similar grounds:

The following statement appears in the record:

"The facts stated in the challenge, were admitted to be true by the State, and counsel for the State admitted in argument, that in his opinion N. B. Rogers was disqualified. in so far as the case against defendant, for killing Guy Rogers, was concerned, and that the indictment in that case should be quashed. It is also admitted by the defendant that he had no ground, on which to base a charge of any actual wrongdoing, on the part of the jury commissioners."

After hearing argument his Honor, the presiding Judge, granted the following order:

"It is ordered that the indictment be quashed, on the ground that the grand jury finding the bill, was drawn by a board of jury commissioners, one of whom was an active prosecutor, and employed counsel in this case, and his connection therewith invalidates the same, in so far as this case is concerned, but it does not affect the acts of the grand jury, or the jury in other cases, not connected therewith."

From this order the State appealed upon exceptions. which will be reported.

It will be observed, that the defendant was the moving party, and that the State did not seek any affirmative relief whatever.

In the case of *The State* v. *Henderson,* 73 S. C. 201, 53 S. E. 170, this Court ruled, that when the State appeals from an order, quashing the panel of petit jurors, because of relationship between one of the jury commissioners and the deceased, the appeal presents merely an abstract question, as the defendant could not thereafter be tried by jurors, drawn from said panel; and, accordingly dismissed the appeal. Therefore, the only question now before this Court for consideration, is whether there was error in quashing the indictment, on the ground of illegality, in the drawing of the grand jury. The admissions of counsel for the State, that the jury commissioner,

N. B. Rogers, was disqualified, in so far as the case against the defendant, for killing Guy Rogers, is concerned, further narrows the appeal to the consideration of the question, whether there was error in quashing the indictment against the defendant for the killing of Prentiss Moore. If the indictment was properly quashed, in so far as it charged the defendant with the murder of Guy Rogers, then it was also properly quashed, in so far as it charged the defendant with the murder of Prentiss Moore, "for the reason it is charged that at the same time, and as part of the same transaction, at which the said . Prentiss Moore was killed, if killed at all, Guy Rogers was killed also." The rule as to quashing the indictment in such cases, is thus stated in *State* v. *Perry,* 73 S. C. 199, 53 S. E. 169: "The correct rule is, that the consanguinity or affinity must be such as would reasonably lead to the presumption, that the jury commissioner would thereby be affected, in such manner as to impair the proper discharge of his duties, and this fact must be determined by the presiding Judge, in the exercise of a sound discretion. It would tend to retard the trial of cases very much to adopt any other rule."

There is nothing indicating an erroneous exercise of discretion by the presiding Judge, in quashing the indictments.

As there seems to be some doubt in regard to the manner of drawing the grand and petit jurors, when any of the jury commissioners are disqualified by reason of relationship, we take this occasion to settle the practice in such cases. Sections 16, 17 and 18 of the act of 1902 (23 Stat. 1066) provide:

Section 16. "That whenever the jury list of any county shall be destroyed by fire or other casualty, or whenever it shall ·be held by any Court of competent jurisdiction that the jury list of any county has been unlawfully prepared, or is irregular or illegal, so as to render void the drawing of jurors therefrom, it shall be the duty of the county

28—91

auditor, the county treasurer and the clerk of the Court of Common Pleas of each county to prepare a special jury list for the said county forthwith in the manner herein prescribed, from which special list grand and petit jurors shall be drawn for the Courts of General Sessions and Common Pleas for such county until the annual jury list shall have been prepared for such county as herein provided.

Section 17. "That when at any time it shall be determined by the resident Circuit Judge of any Circuit, upon complaint made to him, that an irregularity has occurred in the drawing of the juries for any Circuit Court within his Circuit, or that any act has been done whereby the validity of any juries drawn or to be drawn may be questioned, it shall be lawful for such Circuit Judge to issue his order to the county auditor, the county treasurer and the clerk of the Court of Common Pleas for each county for which said Circuit Court shall be held, at least five days before the sitting thereof, to proceed to draw jurors for such term, or take such measures as may be necessary to correct such error.

Section 18. "That in case there shall be a vacancy in the office of the clerk of the Court of Common Pleas, county auditor, or county treasurer, at the time herein fixed for preparing said jury list, or for drawing a jury, or any one of said officers shall be disqualified or unable to serve for any cause, the county superintendent of education shall act in his place and stead, and in case there shall be a vacancy in two of said offices, or for any other cause, two of said officers shall be unable to serve, the county superintendent of education and the sheriff of such county shall act in their places and stead."

These three sections are very broad in their terms and are intended to prevent delay or interruption of the business of the Court, which would arise but for the powers conferred on the resident Circuit Judge and the Court. In this case, it appears that a delay of nearly two years in

the trial of an important criminal cause would result if the irregularity in the making up of the grand jury cannot be remedied. It cannot be doubted that the sections of the statute above cited confer ample power on the Court and the resident Circuit Judge to afford relief in such a case.

Appeal dismissed.