9687

STATE v. LABOON *ET AL.*

(92 S. E. 622.)

1. WITNESSES—DISQUALIFICATION—CONVICTION OF MANSLAUGHTER.—The fact alone that a witness offered by the State had been convicted of manslaughter did not render his testimony inadmissible.

2. WITNESSES — DISQUALIFICATION — CONVICTION OF CRIME — NATURE OF CRIME.—In determining whether conviction of a crime disqualifies a witness, the moral characteristics involved alone are to be considered;

the name of the offense or the punishment inflicted being immaterial.

3. WITNESSES—DISQUALIFICATION—CONVICTION OF CRIME—ALTERATION OF NAME OR PUNISHMENT.—Neither a change in the nature of the punishment nor the name of an offense alters the moral qualities which must be taken into consideration in determining whether the offense is infamous, disqualifying a witness.

4. CRIMINAL LAW—EVIDENCE—RES GESTAE—STATEMENTS OF DECEASED.— Statement by deceased as to who shot him, made from 5 to 15 minutes after beginning of the affray, and before any attempt had been made to remove him, were admissible, being part of *res gestae*.

Before SMITH, J., Anderson, February, 1916. Affirmed.

Walter Laboon and another were convicted of manslaughter, and appeal.

*Messrs. Greene & Earle* cite: Civil Code, sec. 3992; 3 Enc. Ev. 207. *Manslaughter a felony:* 21 Cyc. 661; 24 S. C. 112, 114; Crim. Code, sec. 148. *Felonies disqualify:* 15 S. C. 235; 40 Cyc. 2205; 3 Enc. Ev. 204; 48 S. C. 143; 12 S. C. 287. *Res gestae:* 68 S. C. 310; 83 S. C. 477; 76 S. C. 92; 68 S. C. 277; 56 S. C. 369; 68 S. C. 310. *Dying declarations:* 104 S. C. 257, 258.

*Mr. Solicitor Smith,* for respondent, cites: *As to competency of witness:* 48 S. C. 143. *Dying declarations:* 68 S. C. 277 and 310; 47 S. C. 9; 76 S. C. 92; 94 S. C. 92; 104 S. C. 358; 105 S. C. 316.

May 23, 1917.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The defendants were tried for murder, and convicted of manslaughter.

The first question presented by the exceptions is whether there was error on the part of his Honor, the presiding

Judge, in overruling the objection of the appellants to the testimony of a witness offered by the State, on the ground that he had been convicted of manslaughter, it being a felony. At common law it was a prerequisite to the disqualification of a witness, on the ground that he had been convicted of an offense, that such offense should be of the *crimen falsi;* and, in order for the crime to be infamous, it was not only necessary that it should involve falsehood or fraud, but that it should be of such a nature as made it probable that the party committing the offense was devoid of truth and insensible to the obligations of an oath. The infamy which rendered such person incompetent as a witness was formerly held to arise from two sources; the conviction of certain offenses and the infliction of certain punishments. It was soon found that the classification based upon the nature of the punishment involved offenses that were not of the *crimen falsi,* and accordingly such classification was rejected as unreasonable. A classification founded upon the fact that certain offenses are denominated felonies is likewise unsound, because it is not a fact that the nature of all felonies is such as to make it probable that the parties committing them are devoid of truth and insensible to the obligations of an oath. The name by which an offense is designated does not change its moral characteristics, which must necessarily be considered in determining whether the person convicted of a felony is disqualified as a witness; in other words, whether the offense was of the *crimen falsi.*

These conclusions are sustained by the following authorities: Greenleaf on Evidence, secs. 372, 373:

"Under this general head of exclusion, because of insensibility to the obligation of an oath, may be ranked the case of persons infamous; that is, persons who, whatever may be their professed belief, have been guilty of those heinous crimes which men generally are not found to commit, unless when so depraved as to be unworthy of credit for truth. The basis of the rule seems to be that such a person is

morally too corrupt to be trusted to testify—so reckless of the distinction between truth and falsehood, and insensible to the restraining force of an oath, as to render it extremely improbable that he will speak the truth at all.

"It is a point of no small difficulty to determine precisely the crimes which render the perpetrator thus infamous. The rule is justly stated to require that 'the *publicum judicium* must be upon an offense, implying such a dereliction of moral principle as carries with it a conclusion of a total disregard to the obligation of an oath.' But the difficulty lies in the specification of those offenses. The usual and more general enumeration is treason, felony and the *crimen falsi*. In regard to the two former, as all treasons and almost all felonies were punishable with death, it was very natural that crimes deemed of so grave a character as to render the offender unworthy to live should be considered as rendering him unworthy of belief in a Court of justice. But the extent and meaning of the term '*crimen falsi*' in our law is nowhere laid down with precision."

1 Starkie on Evidence, p. 494:

"Formerly the infamy of the punishment as being characteristic of the crime, and not the nature of the crime itself, was the test of incompetency, but in modern times, immediate reference has been made to the offense itself; since it is the crime, and not the punishment, which renders the offender unworthy of belief. By the common law, the punishment of the pillory indicated the *crimen falsi*, and consequently no one who had stood in the pillory could afterwards be a witness, but now a person is competent, although he has undergone that punishment for a libel, trespass or riot; and, on the other hand, when convicted of an infamous crime, he is not competent, although his punishment may have been a mere fine."

In the case of *State* v. *James,* 15 S. C. 233, the Court had under consideration the question whether a person who had been convicted of petit larceny was a competent witness.

Associate Justice (afterwards Chief Justice) McIver, in delivering the opinion of the Court, said:

"There can be no doubt that at common law a conviction of petit larceny rendered a witness incompetent to testify, * * * and we do not see how the fact that the legislature has declared the offense of petit larceny a misdemeanor and reduced the punishment can affect the question under consideration. * * * The fact that the legislature has seen fit to alter the amount and character of the punishment for this offense does not change the nature of the offense, the moral qualities of which remain the same as before. This, therefore, cannot restore the competency of a person convicted of this offense, for, as we have seen, 'it is the crime, and not the punishment, that renders the man infamous.' "

It thus clearly appears that neither a change in the nature of the punishment, nor the designation of an offense as a felony, alters the moral qualities which must be taken into consideration in determining whether the offense is infamous.

The next question for consideration is whether there was error on the part of the Circuit Judge in overruling the objection of the appellant to certain declarations of the deceased, on the ground that they did not form part of the *res gestae*. There was testimony tending to show that the difficulty took place a short distance from the church building; that when the first shot was fired the witness went to the church for the purpose of giving notice of the row, and then heard two other shots; that as soon as he gave the notice of the row, he returned to the place where the difficulty had taken place, and found the deceased lying on his back. The time elapsing from the beginning of the row until the deceased made his statement as to who had shot him was variously estimated from 5 to 15 minutes. The fact that the witness went to the church before the difficulty was finished, and that he returned as soon as he gave the notice and before any attempt had been

made to remove the deceased, tending to show that the declarations of the deceased formed part of the *res gestae.*

Appeal dismissed.