12554

STATE v. HESTER

(146 S. E., 116)

*Messrs. John D. Lanford, L. E. Wood,* and *Mendel L. Smith,* for appellant,

*Solicitor J. G. Leatherwood,* and *Messrs. Dean, Cothran & Wyche, P. A. Bonham, D. W. Smoak,* and *Price & Poag,* for the State,

January 2, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

Jerry Hester and his sons, Claud and Charlie, were charged in the Court of General Sessions of Greenville County with the murder of J. E. Thackston. In their first trial, all three of the defendants were found guilty and sentenced to death. On their appeal to this Court the adverse judgment was reversed and a new trial ordered. *State v. Hester et al.,* 137 S. C., 145, 134 S. E., 885. At the second trial before Hon. T. J. Mauldin, presiding Judge, Claud Hester and Charlie Hester were acquitted. Jerry Hester was found guilty with a recommendation to mercy. From that judgment he has appealed to this Court.

There are nine exceptions, but the counsel for appellant have very properly grouped these into four questions, and they so presented them in their argument. We shall follow their grouping in this opinion.

Upon the call of the case for trial the second time, the defendants moved to quash the regular venire of jurors and a special venire ordered by the Court to be drawn and summoned to fill deficiencies in the regular venire, upon that ground that Mr. J. Ben Watkins, county auditor of Greenville county, one of the jury commissioners who had participated in the drawing of both the regular and special venires, was a brother of Mr. Joe Watkins, a son-in-law

of Mr. Thackston, with whose murder the defendants were charged.

The presiding Judge heard the testimony of Mr. W. K. Thackston, a brother of the deceased, the testimony of county auditor Watkins and of Mr. Harry A. Dargan, clerk of the Court, and one of the jury commissioners, on the motion before him. Auditor Watkins testified that his brother, Joe, married a daughter of the deceased; that he had nothing to do with placing the names of the jurors in the jury box in December, previous to the trial, when the jury boxes were filled for the ensuing year; and that no new names had been placed in the box since the regular time for filling the boxes; that in drawing the jurors for the Court at which the defendants were to be tried, the county treasurer, one of the commissioners, called the names and gave them to the clerk of Court, and that he (the auditor) took the slips with the names of the jurors thereon, put them in an envelope, and, after the drawing was finished, he sealed the envelope and put it back in the jury box; that in drawing the jurors, he did not have in mind the case against these defendants. Clerk of Court Dargan testified as to the manner of drawing the jury, and that the commissioners consulted together with regard to the qualification or death or removal of any petit juror that was drawn. Mr. Thackston testified as to the relationship of the county auditor to the son-in-law of the deceased.

After hearing the testimony, the Judge overruled the motion of the defendants to quash the venires. When it became necessary to draw a second special venire, however, he directed County Auditor Watkins to stand aside, and required the county superintendent of education to act as a jury commissioner.

The appellant, by several exceptions, imputes error to the circuit Judge in refusing to grant the motion to quash the regular and first special venires. In support of these exceptions, his counsel cite several decisions heretofore rendered

by this Court; but we do not think it necessary to review all these cases. As we conceive it, the proper rule in the matter under consideration was laid down by this Court in an opinion written by the late distinguished Chief Justice Gary in the case of the *State v. Perry*, 73 S. C., 199, 53 S. E., 169. In that case, also cited by the appellant, the following principal was declared:

"The correct rule is that the consanguinity or affinity must be such as 'would reasonably lead to the presumption that the jury commissioner would thereby be affected in such manner as to impair the proper discharge of his duties,' and this fact must be determined by the presiding Judge in the exercise of a sound discretion. It would tend to retard the trial of cases very much to adopt any other rule."

The rule in *Perry's case* was followed in *State v. Henderson*, 73 S. C., 201, 53 S. E., 170, *State v. Smith*, 89 S. C., 158, 71 S. E., 830, and *State v. Malloy*, 91 S. C., 429, 74 S. E., 988.

As we understand relationship by affinity, there was no such relation between the deceased, Mr. Thackston, and the county auditor, Mr. Watkins. Webster's New International Dictionary denies affinity: "Relationship by marriage between a husband and his wife's blood relations, or between a wife and her husband's blood relations." Auditor Watkins is related by affinity to the daughter of the deceased, Mr. Thackston, but that relationship did not extend to her father.

Regardless of the relationship between the parties, under the principal in the *Perry case,* it was within the descretion of the circuit Judge to determine if the relationship was such as to make it improper for Auditor Watkins to have participated in the drawing of the juries. While the duty is imposed upon the circuit Judge to see that the drawing of juries is done in a fair, impartial, and honest manner, this Court will sustain the decision of the circuit Judge thereabout, unless it manifestly appears that there has been an

abuse of the discretion vested in the Judge by the law. We are unable to find any such abuse of discretion in this case.

The appellant contends that there was error on the part of the trial judge in ordering Auditor Watkins to stand aside in the drawing of the second special venire, which was necessary because of failure to secure the required number of jurors, and requiring the county superintendent of education to act as a commissioner in that drawing. It is argued, if there was no error in holding that Mr. Watkins could have participated as a commissioner in the drawing of the former venires, then the Court should have held him qualified to continue in the performance of his duties as a jury commissioner. From the showing made, and in harmony with our previous holding, we think Mr. Watkins could have participated in the drawing of the second special venire without objection. The trial Judge had the right, however, in an abundance of precaution, since the appellant complained at Mr. Watkins acting as a commissioner, to order a substitute commissioner, as allowed under the law. The appellant got in the drawing of the second special venire part of the total thing he demanded—the removal of Mr. Watkins as a commissioner. While he may complain that the Court refused all he asked for, we do not see how he can complain that he was granted a part of his request. If, as suggested by counsel in their argument, the rulings of the circuit Judge were inconsistent, and therefore one of such rulings was bound to be wrong, the answer is that the contentions of the appellant are also inconsistent. The appellant first said Commissioner Watkins should not act at all. When the Court finally agreed with the appellant's view, although the appellant was wrong in his first contention, the appellant then said Mr. Watkins should continue to act. No charge of any partiality was made against the county superintendent of education. The appellant had in the drawing of the second venire fair and impartial jury commissioners, and there was no other claim on his part. He cannot com-

plain now that the Judge gave him at the last what he was contending for all the time.

J. C. Floyd was also indicted for the murder of Mr. Thackston. He was tried separately from the defendants in this case, his trial occurring between the first trial of the defendants here and their second trial. He was convicted of manslaughter. He did not testify at the first trial of the Hesters, but an affidavit made by him was admitted in evidence at that trial; and this Court, in the first appeal, held there was error in such admission. At the trial now under review, Floyd was allowed to testify as a witness for the State over the objection of the appellant. The permitting of him to testify is challenged here as error.

It is conceded by appellant's counsel that it has been definitely determined in this State that, ordinarily, one who has been convicted of manslaughter does not thereby become incompetent as a witness in our Courts. *State v. Laboon,* 107 S. C., 275, 92 S. E., 622, L. R. A., 1917-F, 896. It is of some interest to note that the leading counsel for the defendant here was the distinguished presiding Judge on circuit in the *Laboon case,* and his ruling was affirmed by this Court.

It is not sought now, as we understand it, to overrule the *Laboon case,* but really to follow the decision therein. Our attention is directed to certain language of Chief Justice Gary in that case: "The name by which an offense is designated does not change its moral characteristics, which must necessarily be considered in determining whether the person convicted of a felony is disqualified as a witness; in other words, whether the offense was of the *crimen falsi.*"

The theory of counsel for the appellant is to this effect: That the evidence showed conclusively that Mr. Thackston was waylaid and killed for the purpose of robbing him, or, conceding the committed robbery by murdering him; that Floyd, by his confession, while not the actual perpetrator of the murder, was at least an accessory thereto, both before and after the fact; and, regardless of the fact that a jury had

convicted him of manslaughter only, nevertheless the crime of which he was convicted was of the most heinous and infamous nature, and, in passing upon his qualifications to testify as a witness, the Court should have considered more than the judgment rendered against Floyd, and it on account of the character of the crime of which he was really convicted should have declared Floyd incompetent as a witness.

We cannot agree with the very plausible argument of the learned counsel. When Chief Justice Gary said, in effect, in the quotation above made, that the "moral characteristics" of an offense "must necessarily be considered in determining whether the person convicted of a felony is disqualified as a witness," we think it is evident that he referred to the consideration of such characteristics as a Court or legislative body should take into consideration in determining what crimes, the conviction of, would disqualify one as a witness. We cannot conceive that it was ever intended to be held that a trial Court, in passing upon the qualification or disqualification of a person convicted of crime to become a witness, should have to make inquiry back of the judgment of the Court in which the conviction occurred. If it were necessary for a trial Court to take this course, it would mean that such Court would have to try over again the case which resulted in the conviction of the proffered witness. The attempt even of a trial Court to so inquire would be a collateral attack upon a judgment which is not favored in the law. To adopt as a rule the argument of appellant's counsel would be to require our trial Courts in numerous instances to suspend the hearing of cases on trial while they retried other cases previously tried, some of them perhaps many years before. For, by the suggested procedure, any person offered as a witness, challenged because of conviction of a disqualifying crime, could assert that the judgment against him was wrong, or that his offense had not really been that shown in the record of his conviction. The well-recognized rule is that the judgment of the Court properly presented

368

to the trial Court prior to the swearing of the disqualified witness is not only sufficient, but is the only proper way in which to raise the question of the competency of the proposed witness. If the produced record shows that the witness offered was convicted of a disqualifying crime, he should not be allowed to testify, unless the disqualification has been removed by the proper authority. If, on the other hand, the record does not disclose the conviction of the proposed witness of a disqualifying crime, he may testify. See opinion of the present Chief Justice in *State v. Lollis,* 115 S. C., 201, 105 S. E., 275, where, speaking for this Court, he quoted with approval certain expressions of Mr. Greenleaf.

At the instance of officers and detectives, the three Hesters were permitted to be together in a cell of the county jail a few days prior to their first trial. The jailor stated to them that he was "slipping" them together so they might "prepare" for their trial. Through the placing of a dictaphone, the officers and detectives were enabled to overhear the conversation between the three defendants. This testimony was objected to at the first trial, but this Court held, in the first appeal, that the grounds of objection then interposed were insufficient, and that the testimony was admissible. At the last trial, the "dictaphone testimony" was objected to by the defendants on a new ground, namely, that such testimony, was in violation of the provisions of Section 18 of Article 1 of the Constitution. That section is as follows:

"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by, an impartial jury; and to be fully informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to be fully heard in his defense by himself or by his counsel or by both."

The appellant asserts that he and his codefendants were entitled to have full and fair opportunity to prepare their

defense to the crime charged against them; that they had the right to confer in private; and that the "eavesdropping" of the officers and detectives was a violation of that particular language of the constitutional provision which declares that an accused shall enjoy the right "to be fully heard in his defense." We have not been favored with any authority to support the proposition advanced, and our own independent investigation has failed to disclose any such authority. We think it is clear that the privilege "to be fully heard in his defense" refers to the time and place of the trial of the accused. We do not see how it is possible by the most strained construction to hold with the appellant in the view he takes.

The judgment of this Court is that the judgment of the Court of General Sessions of Greenville County be and the same is hereby affirmed.

MR. CHIEF JUSTICE WATTS AND MESSRS. JUSTICES COTHRAN, STABLER, and CARTER.

MR. JUSTICE COTHRAN (concurring) : I think that the objection of a defendant to the admission of evidence obtained by decoys or entrapment is limited to the encouragement, soliciting, urging, or advising of the defendant to *commit a crime,* and does not prevail against the obtaining of evidence of *a crime that has been committed;* in briefer form, decoys or artifices may be employed to *entrap criminals,* but not to *create them.*