19833

The STATE, Respondent, v. Jacob L. MAXEY, Appellant.

(205 S. E. (2d) 841)

*Arnold S. Goodstein, Esq.,* of *Goodstein & Jennings,* Charleston Heights, *for Appellant,*

*Robert B. Wallace, Esq., Sol.,* of Charleston, *for Respondent,*

June 4, 1974.

LITTLEJOHN, Justice.

The defendant, Jacob L. Maxey, was tried upon an indictment charging him with the murder of James Davis. He was found guilty of murder by a jury and received the mandatory sentence of life imprisonment. He has appealed, contending that the trial judge erred in the following three particulars:

1. In charging the jury that malice is presumed from the use of a deadly weapon,

2. In refusing to allow the defendant's mother to testify as to what he told her subsequent to the shooting, and

3. In refusing to charge the jury the law of involuntary manslaughter.

On the evening of November 4, 1972, the defendant was one of about fifteen patrons in an establishment located in the Midland Park Section of Charleston County and known as John's Sweet Shop. At approximately 10:30 p. m. a fight erupted therein between Nathaniel Wade and Andrew Toomer. The defendant became involved, apparently in an attempt to break up the fight. At the urging of the proprietor of the sweet shop, all of the patrons, including Wade, Toomer, and the defendant, went outside the building.

The testimony varied as to whether, after everyone had congregated outside the sweet shop, the fight continued, whether only words were exchanged, or whether nothing at all actually preceded the shooting. All of the witnesses agreed, however, that in a matter of minutes the defendant drew a pistol and fired three or four shots, killing Toomer as well as James Davis. William Rollins was wounded.

The defendant plead self-defense, to establish which he relied primarily upon the testimony of Teresa Barton. While there was no evidence tending to indicate that anyone other than the defendant possessed a weapon of any sort, Miss Barton testified that Rollins was "coming after" the defendant, and that Davis and Toomer were "walking toward" him when all were shot.

The first question posed for this Court's determination relates to the following portion of the trial judge's instructions to the jury:

"And, while malice is presumed or implied from the use of a deadly weapon, where the circumstances relating to the death of the deceased are brought out in the evidence, then this presumption vanishes and the burden is on the State to prove malice where a deadly weapon is used by evidence which satisfies you on the jury beyond a reasonable doubt."

The defendant contends that the trial judge should have charged that the law creates no presumption of malice when the circumstances attending the homicide have been developed during the course of the trial. The identical contention was advanced upon this Court in *State v. Davis,* 50 S. C. 405, 27 S. E. 905 (1896), and the following language employed therein is equally appropriate here:

"This exception is not well taken. It was quite applicable and appropriate in this case for the judge, in his charge, to explain the meaning of 'implied malice,' the indictment being for murder. The record further declares that, immediately after explaining 'implied malice,' he expressly charged precisely as it is claimed he should have charged."

In cases too numerous to require citation it has been held that instructions must be considered as a whole when ruling upon exceptions to portions thereof. Cases collected, 7A South Carolina Digest, Criminal Law Key 822(1) (1971). The effect of the trial judge's charge in this instance was to place the burden of proving malice beyond a reasonable doubt upon the State. We find no error.

Secondly, error is assigned to the trial judge's refusal to allow the defendant's mother to testify relative to what the defendant said to her upon arriving at their home after the shootings. It is claimed that such testimony was admissible under the *res gestae* exception to the hearsay rule.

In view of the fact that after the shootings the defendant traveled, apparently on foot, approximately one mile to his home, whereupon he made a self-serving statement to his mother, we cannot say that the trial judge erred in refusing to allow Mrs. Maxey to testify relative thereto under the *res gestae* doctrine.

From our decisions in *State v. Hester,* 137 S. C. 145, 134 S. E. 885 (1926), the *State v. Lindsey,* 68 S. C. 276, 47 S. E. 389 (1904), it may be said with certainty that the admissibility of testimony as *res gestae* is very much within the sound discretion of the trial judge,

especially where the declarations, sought to be introduced are not precisely concurrent with the transaction in question. In *State v. Murphy,* 216 S. C. 44, 56 S. E. (2d) 736 (1950), a homicide prosecution, this Court held inadmissible as part of the *res gestae,* a statement by the defendant to a police officer to whom she allegedly went for protection, where she had traveled one-half mile after the shooting in order to reach the presence of the officer, reasoning that such statement could just as well have been a self-serving declaration made with deliberate design. To the same effect is *State v. Hunter,* 82 S. C. 153, 63 S. E. 685 (1909).

The defendant also contends that the trial judge ■ erred in refusing to instruct the jury the law of involuntary manslaughter. We agree with the trial judge that such was not required by the evidence. Such a charge is completely inconsistent with the acts of the defendant which resulted in not only the death of Davis, but the death of Toomer and the wounding of Rollins. Shooting three or four times under the circumstances disclosed by the evidence in this case negates a negligent killing.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.