20752

The STATE, Respondent, v. William Gary BLACKBURN, Appellant.
(247 S. E. (2d) 334)

*Kermit S. King* and *Jean L. Perrin,* Columbia, and *B. Henderson Johnson, Jr.,* Aiken, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen. Brian P. Gibbes,* Columbia, and *Sol. Sylvia W. Westerdahl,* Aiken, *for respondent.*

August 24, 1978.

NESS, Justice:

Appellant Blackburn allegedly procured two men to kill Pamela Tanner. He was indicted as an accessory before the fact of murder, found guilty, and sentenced to life imprisonment. We affirm.

Pamela Tanner was assaulted and set on fire in her car near Williston on January 14, 1977. She eventually died from her injuries.

The two admitted principals, Edward M. Davis and Leonard W. Crosby, were indicted for murder. Crosby pled guilty and received a life sentence; Davis was subsequently indicted for lesser charges arising out of the same incident. Both men testified against appellant.

The State sought to prove appellant's motive for Ms. Tanner's murder by introducing evidence of alleged prior crimes for which appellant had been indicted. Numerous witnesses stated that Ms. Tanner planned to testify against

Blackburn at his trial for housebreaking, grand larceny, and arson, and to prevent this, he plotted to have her killed.

Initially, appellant asserts the trial court erred in admitting testimony concerning an oral statement implicating Blackburn made by the deceased on the night of her assault. Approximately one hour after Ms. Tanner was injured, she responded to questions by a deputy sheriff at the hospital. A rescue squad worker who was present was permitted to testify at trial that "she (Pamela Tanner) felt sure that Gary Blackburn was behind all of this, that she was a star witness, was supposed to be a witness in a case of his." (Tr. p. 28). This statement was allowed into evidence under the *res gestae* exception to the hearsay rule.

In order to qualify as a part of the *res gestae,* a statement must be substantially contemporaneous with the litigated transaction and be the spontaneous utterance of the mind while under the active, immediate influence of the event. See McCormick on Evidence, (2d) Ed., p. 686 *et seq.; Marshall v. Thomason,* 241 S. C. 84, 127 S. E. (2d) 177 (1962); *State v. Maxey,* 262 S. C. 504, 508, 205 S. E. (2d) 841 (1974). The rationale for the exception lies in the special reliability accorded to a statement uttered in spontaneous excitement which suspends the declarant's powers of reflection and fabrication. See 6 Wigmore, Evidence, § 1747. Also see *Rast v. Mutual Life Ins. Co. of New York,* 112 F. (2d) 769, 773 (4th Cir. 1940).

Generally, accusatory utterances of a homicide victim are admissible as a part of the *res gestae* when they spring spontaneously and instinctively from the stress of pain or excitement and are made soon enough after the act to preclude deliberation. See Annotation, Admissibility, As Part of *Res Gestae* of Accusatory Utterances Made by Homicide Victim After Act, 4 A. L. R. (3d) 149; *State v. Talbert,* 41 S. C. 526, 19 S. E. 852 (1894); *State v. Laboon et al.,* 107 S. C. 275, 92 S. E. 622 (1917). Whether or not such utterances are admissible as a part of

the *res gestae* depends upon the particular circumstances of each case, and a wide amount of discretion is vested in the trial court. *State v. Wideman,* 110 S. C. 394, 96 S. E. 688 (1918); *Powers v. Temple,* 250 S. C. 149, 156 S. E. (2d) 759 (1967).

■ The time interval here, though in excess of one hour, does not necessarily eliminate the statement as a part of the *res gestae.* In *Guthrie v. U. S.,* 92 U. S. App. D.C. 361, 207 F. (2d) 19 (1953), the admission of a statement as a part of the *res gestae* was upheld where it was made at least eleven hours after the alleged assault. In *State v. Quillien,* 263 S. C. 87, 207 S. E. (2d) 814 (1974), a rape victim was interviewed by a police officer after she arrived at the emergency room, and this Court concluded her statement was admissible. We held that to qualify as a part of the *res gestae,* the utterance need only be "substantially contemporaneous" with the transaction. Moreover, the severity of Ms. Tanner's injuries indicate that she was still under the stress and pain of the assault at the time she made the statement. *Rast v. Mutual Life Ins. Co. of New York, supra.*

■ It is the very nature of Pamela Tanner's statement which renders it inadmissible under the *res gestae* exception. The declarant was stating her opinion as to *why* the assault occurred rather than giving a factual account of *how* it occurred. As Ms. Tanner's accusatory statement appears to be the product of consideration and reflection, it cannot qualify as a part of the *res gestae.* While the statement may have been sufficiently close in point of time and place to form part of the *res gestae,* it failed to explain, elucidate or in some way characterize the nature of the event; rather it expressed a conclusion. *Anders v. Nash et al.,* 256 S. C. 102, 180 S. E. (2d) 878 (1971).

The Federal Rules of Evidence have codified the *res gestae* exceptions to the hearsay rule. The first two exceptions in Rule 803 are as follows:

"(1) Present sense impression. A statement describing or explaining an event or condition made while the declar-

ant was perceiving the event or condition, or immediately thereafter.

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Under the Federal Rules, testimony qualifying under one exception is admissible even if not encompassed by the other. Therefore, while Ms. Tanner's statement would not be admissible under the present sense impression exception of Rule 803 because of its conclusory nature, it would qualify as an excited utterance and be admissible under the second exception. See *Hilyer v. Howat Concrete Company, Inc. et. al.,* .... U. S. App. D.C. ...., 578 F. (2d) 422, No. 77-1263 (D.C. Cir. May 10, 1978). Under state practice, however, the statement must be both an excited utterance and a present sense impression to be admitted as a part of the *res gestae. Anders v. Nash, supra; Bagwell v. McLellan Stores Co.,* 216 S. C. 207, 57 S. E. (2d) 257 (1949).

We hold that although the evidence was improperly admitted as a part of the *res gestae,* the error was harmless. Pamela Tanner's statement implicating Gary Blackburn was cumulative to other evidence received in the case. Six of the State's witnesses testified that Blackburn plotted Ms. Tanner's murder because she planned to testify against him. Under settled principles, the admission of improper evidence is harmless where it is merely cumulative to other evidence. *Long et al. v. Conroy et al.,* 246 S. C. 225, 143 S. E. (2d) 459 (1965); *Marsh Plywood Corp. v. S. C. State Highway Dept. et al.,* 258 S. C. 119, 187 S. E. (2d) 515 (1972); see also cases collected in West's South Carolina Digest, Appeal & Error, Key 1051(1).

Appellant next asserts the trial judge abused his discretion in allowing into evidence prior alleged crimes by appellant. We disagree. While it is true as a gen-

eral rule that such evidence is inadmissible, a well established exception is when the evidence of other crimes tends to prove motive. *State v. Thomas,* 264 S. C. 159, 213 S. E. (2d) 452 (1975); *State v. Sharpe,* 239 S. C. 258, 122 S. E. (2d) 622 (1961); *State v. Hill,* 268 S. C. 390, 234 S. E. (2d) 219 (1977); *State v. Millings,* 247 S. C. 52, 145 S. E. (2d) 422 (1965).

There was no evidence that Blackburn was at the scene of the assault on Ms. Tanner. Thus it was critical for the State to establish his motive for procuring her murder. The evidence of appellant's alleged prior crimes, about which Ms. Tanner planned to testify, tended to prove motive. It was therefore properly admitted into evidence on this theory.

Appellant next asserts the trial court erred in admitting a statement given by Pamela Tanner to the sheriff implicating Blackburn in the alleged prior crimes. We disagree.

A statement is not hearsay unless it is offered to prove the truth of the matter asserted. Dreher, A Guide to Evidence Law in South Carolina (1967), at 59. This disputed evidence here was admitted to establish that Ms. Tanner made an accusatory statement to the sheriff against Gary Blackburn and that he therefore had a motive to kill her. The statement was not offered to prove the truth of the matter asserted, *i.e.,* that Gary Blackburn in fact committed the earlier crimes. Accordingly, the statement was not hearsay and its admission was not error.

Appellant finally asserts the trial court erred in allowing a principal in the crime to testify in return for pleading guilty to lesser charges. This exception has no merit.

The granting of immunity from prosecution is a matter within the solicitor's discretion. Moreover, the competency of a witness is not affected by a promise of leniency or immunity. Wharton's Criminal Evidence, §

362 (13th Ed. 1972); Annotation, Promise of Immunity or Leniency as Affecting One's Competency as Witness in a Criminal Case, 120 A. L. R. 751 (1939); *State v. Harvey et al.,* 253 S. C. 328, 335, 170 S. E. (2d) 657 (1969). It was not error for the trial judge to permit the disputed testimony.

Affirmed.

LEWIS, C. J., and LITTLEJOHN and GREGORY, JJ., concur.

RHODES, J., concurs in result.