367 S.C. 76 (2005)
623 S.E.2d 836
The STATE, Respondent,
v.
Cornelius WASHINGTON, Appellant.
No. 4033.
Court of Appeals of South Carolina.
Heard September 13, 2005.
Decided October 17, 2005.
Rehearing Denied January 19, 2006.
*78 Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.
Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, all of Columbia; and Solicitor Ralph E. Hoisington, of Charleston, for Respondent.
STILWELL, J.:
Cornelius Washington appeals his conviction for murder, raising two evidentiary issues. We affirm.

FACTS
Washington was involved in a ten-year relationship with Andreia Cropper, ending in April or May of 2002. After the breakup, Cropper met Roy Cotman, a security guard. On August 28, 2002, Cropper and Cotman spent the day together, looking at apartments and fishing. When Cotman drove Cropper home that evening, Washington was waiting in the parking area. Soon after Cotman and Cropper's arrival, Washington stabbed Cotman. Cropper and Washington testified to different versions of the events surrounding the stabbing.

Cropper's Version of the Facts
As Cropper exited Cotman's vehicle, Washington hit Cropper's head with his fist. Cropper noticed knives in Washington's hands. Cropper ran to the door of her mother's home, knocked, and kicked the door. Washington stated, "There's no need knocking on the door because your mama, she ain't there. She's over at your aunt's house." Washington then *79 began yelling at Cotman. Cropper told Washington to leave Cotman alone "because he had nothing to do with it." Washington leaned into the driver's side of Cotman's vehicle. Cropper grabbed the back of Washington's shirt and pulled him out of the car. Cropper next saw Cotman lying on the ground behind the car with blood on his shoulders.

Washington's Version of the Facts
When Cropper exited Cotman's vehicle, Washington stated, "Oh, still messing around with him, huh?" Cotman backed out of the parking area, but returned because Cropper and Washington began arguing. Cotman opened the door of his car and said, "Leave her alone." Cotman exited his vehicle, turned on the interior light of the vehicle, and bent over to look under the seats. Washington said, "I hope you're not going to get a weapon to hurt me." Cotman did not reply. Washington repeated, "I hope you not be looking for no weapon to hurt me with." Cotman opened the back door of his vehicle and started searching under the back seats. Washington said, "Man, I not gonna let you get nothing out of that car to hurt me with." After warning Cotman a few more times, Washington unbuckled his knife and walked toward the car. Cotman jumped up and turned around. Washington began "swinging" his arms at Cotman because he thought Cotman might have a gun. After Cropper pulled Washington away from Cotman, Cotman walked toward the trunk and fell to the ground. Washington testified he did not realize Cotman was injured until Cotman "fell on his face." Before leaving the scene, Washington placed Cotman into the vehicle.

Other Facts
When police officers arrived at the scene, they found Cotman bleeding profusely and lying face down in the back seat of his car. An EMS paramedic testified Cotman was not breathing and had no pulse. EMS transported Cotman to the hospital where he was pronounced dead. A forensic pathologist testified Cotman suffered a stab wound above the collarbone, a stab wound on his chin, and two cuts on his right forearm.
Corporal Scott Kiblock of the Charleston Police Department was present at the crime scene. Kiblock drove Cropper to the *80 Charleston Police Department headquarters to obtain her written statement. The interview process began approximately ninety minutes after the stabbing. During the interview, Cropper was noticeably upset and crying.
Officer Jeffrey Miller, a crime scene technician, investigated the scene and found blood on the front passenger seat, on the rear passenger seat, down the passenger side of the vehicle, and on the trunk. Officer Miller found no blood on the driver's seat or the interior panel of the driver's side. In addition, Officer Miller found a gun and a knife in the trunk of the vehicle. The gun was issued to Cotman in connection with his employment as a security guard.
Police officers found Washington shortly after the murder and arrested him. The officers found two knives on Washington. One knife had Cotman's blood on the blade.
The case proceeded to trial on August 25, 2003. Cropper, Washington, Officer Miller, Corporal Kiblock, and several other witnesses testified. The jury convicted Washington of murder. We affirm.

STANDARD OF REVIEW
In criminal cases, the appellate court sits to review errors of law only. State v. Wood, 362 S.C. 520, 525, 608 S.E.2d 435, 438 (Ct.App.2004). A trial court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error that results in prejudice to the defendant. State v. McLeod, 362 S.C. 73, 79, 606 S.E.2d 215, 218-19 (Ct.App.2004).

LAW/ANALYSIS

I. Exclusion of Gun and Knife
Washington argues the trial court erred in refusing to admit evidence of the gun and knife found in the trunk of Cotman's vehicle, alleging it was relevant to his claim of self-defense. We disagree.
Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable *81 than it would be without the evidence." Rule 401, SCRE. "To establish self-defense, the defendant must establish: (1) he was without fault in bringing on the difficulty; (2) he actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) a reasonably prudent person of ordinary firmness and courage would have entertained the same belief; and (4) he had no other probable means of avoiding the danger." State v. Long, 325 S.C. 59, 62, 480 S.E.2d 62, 63 (1997).
Cropper proffered testimony about the gun and knife. Cropper testified Cotman carried a firearm in his vehicle because he was a security guard. She further testified Cotman's gun was in the trunk of his car on the day of the murder because "he knew that I didn't like guns." When asked whether Cotman was armed with the gun at any point, Cropper responded: "No, it was in the trunk of his car." She added she never saw the trunk open. Cropper had no knowledge concerning the knife found in the trunk. Officer Miller also proffered testimony, stating he found the gun and knife in the trunk of Cotman's vehicle.
Washington testified Cotman exited his vehicle and searched underneath the front and back seats. Washington stated: "most people, like my grandfather and them, they carry they gun under the car seat, you know. So I don't see no other reason . . . for him to be . . . [looking] under the seat."
The trial court refused to admit testimony regarding the weapons found in the trunk of the vehicle on the ground of relevancy. The trial court found: "The Defense . . . has not been precluded from presenting a defense of self-defense or from presenting evidence of self-defense. The Court has merely made a ruling regarding the admissibility of the gun and knife that were found in a locked trunk." The trial court concluded the weapons were not "relevant or probative to any issue in this case."
Washington contends evidence of the gun and the knife in the trunk was relevant to show he reasonably believed he was in imminent danger. There is no evidence in the record, however, indicating Washington knew Cotman had weapons in his trunk on the day of the stabbing, nor is there evidence Washington was aware Cotman ever carried a weapon in his *82 trunk. Furthermore, there is no evidence that Cotman searched his trunk prior to the stabbing. In fact, there was blood on the trunk, indicating that when Cotman approached the trunk, he had already been stabbed.
Finally, Washington presented his claim of self-defense. He testified to his own experience and his grandfather's custom of keeping weapons in vehicles. He explained his belief, at the time of the incident, that Cotman might have a weapon in the car. The trial court charged the jury on the law of self-defense. Under these facts, we find no prejudicial error by the trial court in excluding evidence regarding weapons found in Cotman's trunk.

II. Hearsay, the Excited Utterance Exception, and Testimonial Evidence
Washington also argues the trial court erred in allowing Corporal Kiblock to testify regarding the contents of Cropper's written statement. The trial court found the statement qualified as an excited utterance. Washington argues the trial court erred in admitting the testimony because it was hearsay, was not an excited utterance, and it improperly bolstered Cropper's testimony. We find no reversible error.
"`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. Hearsay is inadmissible as evidence unless an exception applies. State v. Townsend, 321 S.C. 55, 59, 467 S.E.2d 138, 141 (Ct.App.1996). One exception is the excited utterance exception. Rule 803, SCRE.
"Three elements must be met to show a statement is an excited utterance: (1) the statement must relate to a startling event or condition; (2) the statement must have been made while the declarant was under the stress of the excitement; and (3) the stress must have been caused by the startling event or condition. The court must consider the totality of the circumstances in determining whether a statement falls within the excited utterance exception." State v. Davis, 364 S.C. 364, 402-03, 613 S.E.2d 760, 780-81 (Ct.App. 2005) (internal citations omitted). The rationale for the excited utterance exception lies in the special reliability accorded to a statement uttered in spontaneous excitement that suspends *83 the declarant's powers of reflection and fabrication. Id. at 403, 613 S.E.2d at 781. The passage of time between the startling event and the hearsay statement is not necessarily a dispositive factor. State v. Blackburn, 271 S.C. 324, 328, 247 S.E.2d 334, 336 (decided prior to the adoption of the Rules of Evidence and discussing the "excited utterance" exception as res gestae; noting that a time interval of over one hour, and up to eleven hours, did not necessarily eliminate a statement as part of the res gestae).
In the instant case, the stabbing was clearly a startling event. There is evidence Cropper was under stress caused by the stabbing at the time she made her statement. Corporal Kiblock testified in camera that the statement began approximately ninety minutes after the incident. According to Kiblock, Cropper was "extremely upset and distraught" as she gave her statement. She cried throughout the statement, stopping at times to regain her composure. Finally, the stress was caused by the startling event of her ex-boyfriend stabbing her new boyfriend.
In addition, although Washington argues that a "narrative" statement given to police is inadmissible under this exception, numerous South Carolina cases have held otherwise. See State v. Burdette, 335 S.C. 34, 43, 515 S.E.2d 525, 530 (1999) (providing an extensive list of instances in which the court has admitted statements to police pursuant to the former common law res gestae exception).
Washington relies in part on Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), an important case decided by the United States Supreme Court subsequent to Washington's trial. However, we find Crawford does not apply. In Crawford, the prosecution introduced tape-recorded statements made to police by Crawford's wife, Sylvia. Id. at 38-40, 124 S.Ct. 1354. Resorting to the application of the marital privilege, which generally bars a spouse from testifying without the other spouse's consent, Sylvia did not testify at trial, and was therefore considered an unavailable witness. Id. at 40, 124 S.Ct. 1354. On appeal, the court concluded that when the declarant is unavailable, hearsay statements that are testimonial in nature can be admitted into evidence only when the declarant has previously been subjected to cross-examination. Id. at 68, 124 S.Ct. 1354. The court's analysis was *84 rooted in a defendant's Sixth Amendment[1] right to confrontation. In the instant case, had Cropper been unavailable as a witness at trial, Crawford would be controlling and the admission of her statement likely error.[2] However, because Cropper was available and did in fact testify at trial, a confrontation clause analysis under Crawford is not required.
We agree with Washington that Cropper's statement constituted hearsay. However, we find, like the trial court, that the statement qualified for admission under the excited utterance exception. Finally, we find the statement did not improperly bolster Cropper's testimony, as her statement contained numerous differences compared to her direct testimony. See Ingle v. State, 348 S.C. 467, 474, 560 S.E.2d 401, 404 (2002); Jolly v. State, 314 S.C. 17, 21, 443 S.E.2d 566, 569 (1994).

CONCLUSION
For the reasons stated herein, the trial court's decision is AFFIRMED.
HEARN, C.J., and KITTREDGE, J., concur.
NOTES
[1] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. Const. amend. VI.
[2] Although the Supreme Court failed to define what constitutes a testimonial statement, it concluded, "[s]tatements taken by police officers in the course of interrogations are . . . testimonial under even a narrow standard." Crawford, 541 U.S. at 52, 124 S.Ct. 1354.