0416

The STATE, Respondent, v. Lee M. WILLIAMS, Appellant.

(331 S. E. (2d) 354)

Court of Appeals

*Deputy Appellate Defender William Isaac Diggs,* of *S. C. Com'n of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *Carolyn M. Adams,* Columbia, and *Sol. William B. Traxler, Jr.,* Greenville, *for respondent.*

Heard Jan. 23, 1985.

Decided March 12, 1985.

SANDERS, Chief Judge:

Appellant Lee M. Williams appeals his conviction for armed robbery, arguing that he is entitled to a new trial because the trial judge erred in allowing certain testimony. We reverse and remand.

## I

### THE EVIDENCE

The evidence contained in the record before us can be summarized as follows:

A female employee of an apartment complex testified that a man wearing an "army coat" with a stocking cap over his face walked into the rental office of the complex and pointed a rifle at her. She went on to testify that the man threw a pink pocketbook on her desk and, in a soft, "feminine" voice with a "New York" accent, commanded her to put the office money in it. The employee said she put approximately $1,400 in the pocketbook, and the man fled with it. The employee further testified that the man's voice was familiar to her as that of a black man who had been in the office before, and she said she had told an investigating police officer "a name to place with the voice." She also said she had previously spoken to Williams in the office, but she did not say she told the police officer Williams' name. Finally, she identified a

pocketbook and a rifle presented to her by the solicitor as being those used in the robbery:

A police officer testified that Williams had an army coat in his possession when he was arrested. The officer identified a coat as being the one Williams had at that time. He went on to testify that he had gone to the rental office following the robbery and was handed the pocketbook identified by the employee in her testimony. The officer further testified that he had gone to the place where Williams' wife was employed and had spoken to her. The solicitor then asked him these critical questions, receiving the answers indicated:

> Q. And did you take the pocketbook with you to show to her?
> A. Yes, I did.
> Q. Could she identify that pocketbook?

At this point, Williams' lawyer objected to the question. After hearing arguments of counsel, the trial judge overruled the objection and the officer answered by saying:

> A. Yes, she positively identified that pocketbook.

The State then closed its case, presenting no further evidence.

In our opinion, the admission of this testimony was in violation of the rule against hearsay and the Confrontation Clauses of both the United States and South Carolina Constitutions.

## II

### THE RULE AGAINST HEARSAY

The rule against hearsay prohibits the admission of testimony (or written evidence) of a statement made out of court, offered in court to prove the truth of the matter asserted, unless an exception to the rule is applicable. *Player v. Thompson*, 259 S. C. 600, 193 S. E. (2d) 531 (1972), *citing*, C. McCormick, *Law of Evidence* § 225 (1954). The reasons for excluding hearsay are succinctly set out in

*Jones v. Clarleston & W. C. Ry. Co.,* 144 S. C. 212, 142 S. E. 516 (1928).[1]

In our opinion, the testimony of the police officer was hearsay. Even if Mrs. Williams communicated her identification of the pocketbook to him in some way other than by actually saying she had some knowledge of it, her identification would nonetheless be a "statement" within the meaning of the term hearsay, and it does not matter that there was no direct quotation of any words used by her. Wordless conduct, such as the nod of the head or pointed finger, may be hearsay if it is intended as a communication. Where words are used, no direct quotation of the words is necessary. J. Dreher, *A Guide to Evidence Law in South Carolina* 63 (1967). *Cf., State v. Corn,* 215 S. C. 166, 54 S. E. (2d) 559 (1949); *State v. Pollard,* 260 S. C. 457, 196 S. E. (2d) 839 (1973) (cases hereafter discussed in greater detail involving unquoted general statements). Mrs. Williams' identification of the pocketbook was obviously made "out of court." It is equally obvious that the police officer's testimony of her identification was offered "in court."

The State does not argue that any exception to the rule against hearsay is applicable here. Instead, the State argues that the testimony as to Mrs. Williams' having identified the pocketbook was not hearsay because it "does not constitute a declaration offered to prove the truth of the matter asserted; rather it was admissible to show (she) made an utterance." In support of its argument, the State cites *State v. Tabory,* 260 S. C. 355, 196 S. E. (2d) 111 (1973), and *Player v. Thompson,* 193 S. E. (2d) 531. We reject this argument.

In *Tabory,* a defendant was convicted of possession of marijuana after having been arrested while a passenger in a truck containing a substantial quantity of the drug. There was evidence of his prior knowledge of the marijuana. At trial, a prosecution witness was allowed to testify that the driver of the truck had said, in the defendant's presence, that the van was empty. On appeal the defendant argued

---

[1] Probably the most important reason for excluding hearsay is the absence of the opportunity for cross-examination, which has been characterized as "the greatest engine ever invented for the discovery of truth." Younger, *An Irreverent Introduction to Hearsay,* 2 (ABA Litigation Monograph No. 3, 1977).

that admission of the testimony violated the rule against hearsay. The Supreme Court affirmed the defendant's conviction, holding that the testimony of what the driver had said was improperly admitted, not to prove the truth of the matter asserted (*i.e.*, that the truck was empty), but "as evidence of the utterance."

In *Player*, a passenger in an automobile sued three defendants for injuries received in an accident alleged to have been caused by the automobile having defective tires. There was evidence that the tires were defective when examined after the accident. The plaintiff further alleged that two of the defendants had knowledge of the defective tires before the accident occurred. Prior to suit, one of the defendants gave a sworn statement that she had overheard a conversation which had taken place before the accident between a filling station attendant and another defendant. In her statement, she said the filling station attendant had told the other defendant that the tires were defective. At trial, the plaintiff's lawyer attempted to examine the defendant about the conversation described in her statement, in an effort to show both she and the other defendant had notice of the defective tires before the accident. The trial judge sustained an objection on the ground of the rule against hearsay. The Supreme Court reversed a verdict for the defendants, holding that testimony of what the filling station attendant had said should have been admitted, not to prove the truth of the matter asserted (*i.e.*, that the tires were defective), but as evidence that the two defendants had knowledge of the defective tires before the accident.[2]

Unlike the testimony in *Tabory* and *Player*, the testimony in the instant case was offered to prove the truth of the matter asserted (*i.e.*, that Mrs. Williams had some knowledge of the pocketbook). The solicitor, in arguing for the admissibility of her testimony, suggested no other purpose.

[2] Sometimes a statement not offered to prove a fact asserted contains information which must be proven. The statement in *Player* is an example of such a statement because it contains information that the tires were in fact defective and is also evidence that the defendants had notice they were defective. Presumably for this reason, the Court was careful to note that the fact the tires were defective was a fact "proved by other evidence." As more fully discussed hereafter, the record before us in the instant case contains no evidence of Mrs. Williams' identification of the pocketbook, other than the testimony of the police officer.

It is of no consequence that Mrs. Williams is not quoted as saying exactly what her knowledge of the pocketbook was or how she came to have knowledge of it. While it is possible that her knowledge of the pocketbook could have come from some source entirely unrelated to her husband (*e.g.*, her having seen it in the possession of someone else), the testimony that she had identified it was obviously intended to imply he had some connection with it and, thus, the robbery. It is obvious that the testimony could not have been offered for any other purpose relevant to the case. The mere fact that Mrs. Williams made an "utterance" obviously had no relevance to any issue in the case. We therefore find the cases of *Tabory* and *Player*, cited by the State, distinguishable on their facts from the instant case.

On the other hand, we find factual situations analagous to this case in *State v. Corn*, 54 S. E. (2d) 559, and *State v. Pollard*, 196 S. E. (2d) 839 (decided two months after *Tabory*).

In *Corn*, the defendant was convicted of murder. There was evidence the murder victim had been shot and killed in the warehouse portion of his place of business and his body then carried some distance away and dumped in a creek, where it was later found floating. The trial judge allowed a policeman to testify he had fired a gun in the warehouse and thereafter could find no one in the neighborhood who had heard the shots. The purpose of the testimony was apparently to prove the shooting could have taken place in the warehouse without the neighbors' having heard it. The Supreme Court reversed the conviction, holding that the testimony violated the rule against hearsay. The Court reasoned that allowing the testimony was the equivalent of permitting the police officer to testify that people in the neighborhood had told him they did not hear the shots.

In *Pollard*, the defendant was convicted of armed robbery. The victim of the robbery identified the defendant in his testimony. The trial judge allowed a police officer to testify that he signed the warrant for the defendant's arrest "from information he received in the investigation (of the case)." The Supreme Court reversed the conviction, holding the testimony was "clearly hearsay."

Like the testimony in the instant case, the police officers'

testimony in *Corn* and *Pollard* amounted to their saying what they had been told outside of court and, even though they did not testify as to exactly what had been said, their testimony had no purpose other than to prove the truth of the matters asserted.

The State argues further that, even if the testimony was hearsay, Williams was not prejudiced by it because "the record contains independent and overwhelming evidence of guilt." We also reject this argument.

The admission of hearsay constitutes reversible error only if its admission is prejudicial to the accused. *State v. Craig*, 267 S. C. 262, 227 S. E. (2d) 306 (1976). Where hearsay is merely cumulative to other evidence, its admission has been deemed harmless. *See, e.g., State v. Blackburn*, 271 S. C. 324, 247 S. E. (2d) 334 (1978).

We have carefully examined the record before us and can find no evidence of Mrs. Williams' knowledge of the pocketbook independent from the testimony of the police officer. Neither do we find any other evidence connecting Williams to the robbery.[3] Indeed, the solicitor represented to the trial judge that whether Williams' wife "has knowledge regarding that pocketbook" was "of critical importance to this case." This is apparent from a review of the evidence previously summarized in Part I of this opinion.

The apartment complex employee, who was the victim of the robbery, described the robbery in some detail, but she did not identify Williams in her testimony as the person who had robbed her. She described the voice of the robber in her testimony, and she testified that Williams had previously been in the office of the apartment complex and had spoken to her. But she did not describe Williams' voice as being the same or similar to that of the robber, and she did not testify she had given the police Williams' name as a person whose voice fitted that of the robber. She testified the robber wore an army coat, but she did not identify the coat which the police officer testified Williams had when he

---

[3] Although Williams moved for a directed verdict at the end of the State's case on the ground of insufficient evidence, the question of whether his motion should have been granted is not before us because he has appealed seeking only a new trial based on the trial judge's error in admitting hearsay.

was arrested as being the same or similar to that worn by the robber. She identified the rifle presented to her by the solicitor as being the one used in the robbery, but there was no testimony either by her or the police officer connecting the rifle to Williams.

The police officer's testimony as to Mrs. Williams' having identified the pocketbook was obviously material. (As previously noted the solicitor characterized it as being of "critical importance to this case.") When hearsay is erroneously admitted, prejudice is presumed if the hearsay had some probative value on a material fact in the case. *Cooper Corp. v. Jeffcoat*, 217 S. C. 489, 61 S. E. (2d) 53 (1950).

Our conclusion that Williams was prejudiced by the testimony of the police officer is further supported by the result reached by our Supreme Court in *Pollard*. There, as here, the State argued there was no prejudice to the defendant by the admission of hearsay. The Court rejected this argument despite the fact that, unlike the instant case, there was testimony by the robbery victim identifying the defendant as the robber.

For these reasons, we hold the testimony by the police officer as to Mrs. Williams' having identified the pocketbook was hearsay, and Williams was prejudiced by it.

## III

### THE CONSTITUTIONAL RIGHT OF CONFRONTATION

Williams' single exception on appeal asserts that "The court erred when it permitted (the police officer) to testify to an out of court declaration alleged by the Appellant's wife. . . ." While he does not mention the constitutional right of confrontation by name in his exception, he argues before us that he was denied this right. The rule against hearsay is closely related to the Confrontation Clause of the Sixth Amendment to the United States Constitution. *See California v. Green*, 399 U. S. 149, 155, 90 S. Ct. 1930, 1933, 26 L. Ed. (2d) 489 (1970) ("hearsay rules and the Confrontation Clause are generally designed to protect the same values"); *Dutton v. Evans*, 400 U. S. 74, 86, 91 S. Ct. 210, 218, 27 L. Ed. (2d) 213 (1970) (the rule against hearsay and the right of confrontation "stem from the same roots").

The Confrontation Clause provides: "In all criminal prosecutions the accused shall enjoy the right ... to be confronted with the witnesses against him." Article I, Section 14 of the South Carolina Constitution gives an accused this same right: "Any person charged with an offense shall enjoy the right ... to be confronted with the witnesses against him." Section 17-23-60 of the 1976 Code of Laws of South Carolina restates this right. *State v. Smith,* 230 S. C. 164, 94 S. E. (2d) 886 (1956). The right to confrontation envisions:

> a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Ohio v. Roberts,* 448 U. S. 56 at 63, 100 S. Ct. 2531 at 2537-2538, 65 L. Ed. (2d) 597 (1980), *quoting, Mattox v. United States,* 156 U. S. 237, 242-243, 15 S. Ct. 337, 339, 39 L. Ed. 409 (1895).

These tests of truthfulness are so important that the absence of confrontation at trial "calls into question the ultimate 'integrity of the fact-finding process.'" *Ohio v. Roberts,* 448 U. S. at 63, 100 S. Ct. at 2538, *quoting, Chambers v. Mississippi,* 410 U. S. 284, 295, 93 S. Ct. 1038, 1046, 35 L. Ed. (2d) 297 (1973) and *Berger v. California,* 393 U. S. 314, 315, 89 S. Ct. 540, 541, 21 L. Ed. (2d) 508 (1969).

The United States Supreme Court, however, has recognized that the right of confrontation is not absolute. *See Ohio v. Roberts,* 448 U. S. at 63, 100 S. Ct. at 2538 ("competing interests if 'closely examined' may warrant dispensing with confrontation at trial"); *see also Mattox v. United States,* 156 U. S. at 243, 15 S. Ct. at 340 ("general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case").

In the usual case (including even cases where there has been prior cross-examination), when the prosecution desires to have a witness testify as to what has

been said by a hearsay declarant, it must first show that the declarant is unavailable. *Ohio v. Roberts*, 448 U. S. at 63, 100 S. Ct. at 2538.[4] In the instant case, it is stipulated that Mrs. Williams "exercised the privilege of spousal immunity, refusing to testify against her husband."[5] Despite this stipulation, it is not clear to us why the State could not have called her to testify as to her knowledge of the pocketbook. Our Supreme Court has held that a wife can be called to testify against her husband in a criminal prosecution, except as to confidential communications made during marriage. *State v. Reynolds*, 48 S. C. 384, 26 S. E. 679 (1897).[6] Furthermore, even if we were to assume Mrs. Williams was "unavailable," there is an additional hurdle which must be cleared for her statement to be admissible.

When a hearsay declarant is unavailable, testimony ■ as to what the declarant has said is not admissible unless it bears adequate "indicia of reliability," either because it falls within a "firmly rooted" exception to the

---

[4] *See also Mancusi v. Stubbs*, 408 U. S. 204, 92 S. Ct. 2308, 33 L. Ed. (2d) 293 (1972); *Barber v. Page*, 390 U. S. 719, 88 S. Ct. 1318, 20 L. Ed. (2d) 255 (1968); *Motes v. United States*, 178 U. S. 458, 20 S. Ct. 993, 44 L. Ed. (2d) 1150 (1900); *California v. Green*, 399 U. S. at 161-162, 165, 167, n. 16, 90 S. Ct. at 1936-1937, 1938, 1939, n. 16.

[5] The solicitor advised the trial judge that the judge in an earlier trial of the case, which resulted in a mistrial, had ruled Mrs. Williams did not have to testify, and he felt the earlier ruling, though erroneous, was binding on him. The trial judge explained that the earlier ruling was not binding. The court then recessed until the next day, at which time the solicitor announced that he did not intend to call Mrs. Williams as a witness.

[6] While South Carolina once followed the common law rule that neither spouse was ever competent to testify for or against the other in a criminal case, the competency of a spouse is now determined by section 19-11-30 of the 1976 Code of Laws of South Carolina. This section provides:

In any trial or inquiry in any suit, action or proceeding in any court . . . the husband or wife of any party thereto or of any person in whose behalf any such suit, action or proceeding is brought, prosecuted, opposed or defended shall, except as hereinafter stated, be competent and compellable to give evidence, the same as any other witness, on behalf of any party to such suit, action or proceeding. *But no husband or wife shall be required to disclose any confidential or, in a criminal proceeding, any communication made by one to the other during their marriage.* (Emphasis added.)

(*Reynolds* was decided pursuant to an earlier statute enacted in 1882 containing language to this same effect.) Our Supreme Court has also held that the privilege provided by this section belongs exclusively to the spouse called upon to testify and is unaffected by whether the other spouse objects. *State v. Motes*, 264 S. C. 317, 215 S. E. (2d) 190 (1975).

rule against hearsay or because there is "a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U. S. at 63, 100 S. Ct. at 2539.[7] We know of no exception, "firmly rooted" or otherwise, to the rule against hearsay which would be applicable to the instant case. As we have said, the State has not called our attention to any such exception. Neither has there been "a showing of particularized guarantees of trustworthiness" as to Mrs. Williams' identification of the pocketbook, or for that matter, a showing of *any* guarantees that her identification of it was trustworthy.

For these reasons, we hold that Williams was improperly denied his constitutional right of confrontation.

We do not take lightly our decision to reverse the ruling of the trial judge in this case. In the usual case, the admission and exclusion of testimony is a matter largely within the discretion of the trial judge. *State v. Gregory*, 198 S. C. 98, 16 S. E. (2d) 532 (1941). The ruling of the trial judge to admit the testimony in the instant case is entirely understandable in view of the fact that the various authorities on which our decision is based do not appear to have been brought to his attention by the parties.

However, we are at the same time mindful of our sworn

---

[7] In *Roberts*, the Court concluded that the statement of a hearsay declarant had sufficient "indicia of reliability" based upon the fact that the declarant had testified in a previous hearing and had been questioned in detail by the defendant "with the equivalent of cross-examination." It should be noted that the Court declined to say whether *de minimis* questioning by the defendant or only the opportunity to cross-examine would be sufficient to justify dispensing with the right of confrontation. Neither did the Court say exactly what it meant by a "firmly rooted" exception to the rule against hearsay, but it clearly implied that not every exception recognized by the states would provide a basis to avoid the sixth amendment right of confrontation. (The Court observed that the rule is riddled with exceptions developed over three centuries, which vary among jurisdictions as to number, nature, and detail, and every set seems aptly described as "an old fashioned crazy quilt made up of patches cut by cubists, futurists and surrealists.") Nor did the Court explain what would constitute "a showing of particularized guarantees of trustworthiness." Presumably, there would have to be a showing that there was something particular to the case which constituted guarantees that the hearsay was trustworthy.

duty to "preserve, protect, and defend the constitution of this State and of the United States."[8] Our constitutions can be no more than pieces of paper unless courts, like this court, give effect to their provisions. As Professor Friedman has pointed out in his recently published guide to American law:

> Dozens of countries have written constitutions; but some of these are bad jokes played on the public. The constitution of the Soviet Union, for example, has as many glittering, noble phrases as any other. It promises all sorts of liberties and rights. But it has very little to do with living law or the structure of power in the Soviet state. In this regard, the Soviet constitution has plenty of company.

L. Friedman, *American Law* 178-179 (1984).

Some people view the constitutional right of confrontation as merely a legal technicality or loophole in the law through which the guilty can escape just punishment. We see it otherwise. The right of an accused to be confronted by the witnesses against him is perhaps the most important constitutional right provided to people who are not guilty. The right to a trial, standing alone, is fairly meaningless if a conviction can be obtained based only on a prosecution witness reciting a statement allegedly made outside of court. Unfortunately, there is no way the right of confrontation can be accorded people who are not guilty to the exclusion of those who may be guilty. This is because, under our system of justice, no one is guilty until he has been tried and proven guilty. In other words, the right of confrontation cannot be accorded to anyone unless it is accorded to everyone. This is a price we pay for living in the United States of America. Many people feel it is a small price.

For these reasons, the conviction is reversed and the case is remanded for a new trial.

Reversed and remanded.

GARDNER, J. concurs.

---

[8] *See*, S. C. Code Ann. § 14-8-40 (Supp. 1983) and Article VI, § 5 of the South Carolina Constitution (oath of office required for judges of this court).

BELL, J., concurs in part.

BELL, Judge (concurring):

I agree that the conviction should be reversed. I also join in parts I and II of the Court's opinion. Since Williams did not raise the confrontation clause in his exception, I would not address that issue.