1671

The STATE, Respondent v. Franklin Ezekiel DENNISON, Appellant.

(406 S.E. (2d) 383)

Court of Appeals

*Assistant Appellate Defender Tara Dawn Shurling*, of *South Carolina Office of Appellate Defense*, Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.*, and *Miller W. Shealy, Jr.*, Columbia, and *Sol. James O. Dunn, of* Conway, *for respondent.*

Heard May 6, 1991.

Decided June 10, 1991.

SANDERS, Chief Judge:

Defendant Franklin Ezekiel Dennison appeals his convictions for possession with intent to distribute crack cocaine and resisting arrest. The sole issue on appeal is whether the trial judge erred in admitting certain testimony. The defendant argues that the testimony was prohibited by the rule against hearsay and that its admission violated his right of confrontation.[1] We reverse and remand for a new trial.

---

[1] The defendant also argues that the testimony "improperly placed before the jury allegations of criminal wrongdoing, independent of those charges for which [he] was on trial, thereby interjecting into evidence the issue of [his] character when he himself had not placed his character into issue." As will hereafter become apparent, it is unnecessary for us to address this additional argument.

Acting on tips from informants relayed to him by a fellow officer, a police officer stopped a car being driven by the defendant. There was a passenger in the car. The car was registered to the defendant. Other officers came on the scene. A search of the car was undertaken. One of the officers testified he found a quantity of crack cocaine under the seat on the passenger's side of the car. That officer and the officer who relayed the tips testified the defendant and the passenger resisted arrest. The defendant was charged with possession with intent to distribute crack cocaine and resisting arrest. The passenger was charged with the same offenses. However, he negotiated a guilty plea and agreed to testify for the State.

Following a hearing outside the presence of the jury, the trial judge ruled the stop of the defendant's car and its search were valid under the circumstances. The judge also denied the defendant's motion that the State be required to reveal the identity of one of the informants. Later at trial and in the presence of the jury, the officer who relayed the tips was permitted to testify that the informants had told him the defendant was engaged in distributing crack cocaine and "at times was in possession of a weapon." Unsurprisingly, the defendant vigorously objected to the admission of this testimony and moved that the Court strike it. The trial judge overruled his objection and denied his motion to strike.

The defendant makes two arguments: (1) what the informants allegedly said to the police officer is hearsay and, therefore, its admission is prohibited by the rule against hearsay, and (2) admission of the officer's testimony as to what the informants allegedly said violated his right to be confronted with witnesses against him. The rule against hearsay prohibits the admission of testimony or other evidence of a statement made out of court, offered in court to prove the truth of the matter asserted. *State v. Williams*, 285 S.C. 544, 331 S.E. (2d) 354 (Ct. App. 1985). "The admission of hearsay constitutes reversible error only if its admission is prejudicial to the accused." *Id.* at 551, 331 S.E. (2d) at 358.

The defendant's second argument is inextricably linked to his first. The rule against hearsay is closely related to the constitutional right of confrontation. *See California v. Green*, 399 U.S. 149, 155, 90 S. Ct. 1930, 1932-33, 26 L. Ed. (2d) 489 (1970) ("[H]earsay rules and the Confrontation Clause are generally

designed to protect similar values. . . ."); *Dutton v. Evans*, 400 U.S. 74, 86, 91 S. Ct. 210, 218, 27 L. Ed. (2d) 213 (1970) (the rule against hearsay and the right of confrontation "stem from the same roots"). The Confrontation Clause of the federal constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. Const. amend. VI. The South Carolina Constitution gives an accused the same right: "Any person charged with an offense shall enjoy the right . . . to be confronted with the witnesses against him. . . ." S.C. Const. art. I, § 14.[2]

The word "confront" derives from "contra," meaning "against," and "frons," meaning "forehead." *Coy v. Iowa*, 487 U.S. 1012, 108 S. Ct. 2798, 101 L. Ed. (2d) 857 (1988). William Shakespeare was describing the root meaning of confrontation when he had Richard II say: "Then call them into our presence—face to face, and frowning brow to brow, ourselves will hear the accuser and the accused freely speak. . . ." *Id.* at 1016, 108 S. Ct. at 2800, citing Richard II, act 1, sc. 1.

The right of confrontation has a lineage tracing back to the beginnings of Western legal culture. The Roman Governor Festus, discussing the proper treatment of his prisoner Paul, said: "It is not the manner of the Romans to deliver any man up to die before the accused has met his accusers face to face, and has been given a chance to defend himself against the charges." *Id.* at 1015-16, 108 S. Ct. at 2800, citing Acts 25:16. In 100 A.D., Pliny the Younger, the Governor of Bithynia, wrote to the Roman Emperor Trajan, asking how to react to a rumor that someone was a Christian. Trajan replied: "Anonymous information ought not to be received in any sort of prosecution. It is introducing a very dangerous precedent, and is quite foreign to the spirit of our age." *Harvard Classics*, Gaius Plinius Caecilius Secundus' Correspondence with the Emperor Trajan, letter 98 (1937).

What was true in ancient times is no less true in modern times. President Eisenhower described face-to-face confronta-

---

[2] Redundantly, the Legislature has seen fit to grant the right of confrontation by statute. *See* S.C. Code Ann. § 17-23-60 (1985) ("Every person accused . . . shall have a right . . . to meet the witnesses produced against him face to face.").

tion as a part of the code of his hometown. In Abilene, Kansas, it was necessary, he said, to "meet anyone face to face with whom you disagree. You could not sneak up on him from behind, or do any damage to him, without suffering the penalty of an outraged citizenry. . . . In this country, if someone dislikes you, or accuses you, he must come up in front. He cannot hide behind the shadow." *Coy*, 487 U.S. 1012, 1017-18, 108 S. Ct. 2798, 2800, citing press release of remarks given to the B'nai B'rith Anti-Defamation League, November 23, 1953, *quoted in* Pollitt, *The Right of Confrontation: Its History and Modern Dress*, 8 J. Pub. L. 381, 381 (1959).[3]

The rule against hearsay is, of course, subject to exceptions. *State v. Williams*, 285 S.C. 544, 331 S.E. (2d) 354.

Similarly, the right of confrontation is not absolute. *E.g., Ohio v. Roberts*, 448 U.S. 56, 63, 100 S. Ct. 2531, 2537, 65 L. Ed. (2d) 597 (1980) ("[C]ompeting interests if 'closely examined' may warrant dispensing with confrontation at trial."). In the instant case, however, the State does not argue any exceptions are applicable. Instead, the State argues what the informants told the police officer is not hearsay at all. Therefore, the State argues, the rule itself is inapplicable.[4] Quite obviously, the police officer testified in court as to what the informants had told him out of court. The State, nevertheless, argues the statements are not hearsay because they were not offered to prove the truth of the matter asserted. Rather, the State argues the statements were offered to explain the conduct of the police officers.

The State's argument is untenable. At the time the police officer testified before the jury, there was no longer an issue in the case as to the conduct of the officers or whether they acted properly. The trial judge had already ruled, outside the jury's presence, that the stop of the defendant's car and its search were valid. That issue had been resolved and was no longer before the Court. Indeed, the issue was never before the jury. On the other hand, there were before the jury the issues of whether the defendant is a narcotics dealer and

---

[3] The dissent in *Coy* finds Dean Wigmore more persuasive than either President Eisenhower or William Shakespeare. *Coy v. Iowa*, 487 U.S. 1012, 1018-19 n. 2, 108 S. Ct. 2798, 2801-02, n. 2, 101 L. Ed. (2d) 857 (1988).

[4] The State does not directly address the defendant's argument that he was denied the right of confrontation.

whether he is guilty of resisting arrest. The testimony by the police officer that two informants had told him the defendant was engaged in distributing crack cocaine and carried a weapon may very well have influenced the jury in deciding those issues. *See State v. Williams*, 285 S.C. at 552, 331 S.E. (2d) at 359 ("[P]rejudice is presumed if the hearsay had some probative value on a material fact in the case.").[5]

The facts in this case are strikingly similar to the facts in *State v. Pollard*, 260 S.C. 457, 196 S.E. (2d) 839 (1973). There, as here, a police officer was permitted to testify, over objection, regarding information he had received from other persons which led to the defendant's arrest. The officer testified, in effect, that he had "received information from some other source or witnesses as the basis for his signing the warrant [for the defendant]." *Id.* at 460, 196 S.E. (2d) at 840. The Supreme Court reversed holding: "The testimony of the officer, that he signed the warrant upon the basis of information received from witnesses who did not testify, was clearly hearsay and inadmissible." *Id.* The Court also rejected arguments that the defendant was not prejudiced by the testimony.

The right of a defendant not to be convicted based on hearsay or, to say it another way, the right of a defendant to be confronted by the witnesses for the prosecution, is a precious right. It is perhaps the most important right given innocent people. *State v. Williams*, 285 S.C. 544, 331 S.E. (2d) 354. The presumption of innocence is a big thing to people who actually are innocent. *See* E. Loftus and K. Ketcham, *Witness for the Defense* 3 (1991), quoting the movie, *A Cry in the Dark:* "I don't think a lot of people realize how important innocence is to innocent people."

The English barrister, short story writer, playwright, screenwriter, novelist, and biographer, John Mortimer, speaking through his main character, Horace Rumpole, recently lamented the loss of historic rights. "What distresses me most about our times," he said, "is the cheerful manner in which we seem prepared to chuck away those blessed freedoms we have fought for, bled for and got banged up in chokey for down the

---

[5] The State does not argue in its brief that the defendant was not prejudiced by the admission of the testimony in question.

centuries. We went to all that trouble with King John to get trial by our peers, and now a lot of lawyers with the minds of business consultants want to abolish juries. We struggled to get the presumption of innocence, that golden thread that runs through British justice, and no one seems to give a toss for it any more. What must we do, I wonder. Go back to Runnymede every so often to get another Magna Carta and cut off King Charles's head at regular intervals to ensure our constitutional rights? Speaking entirely for myself, and at my time of life, I really don't feel like going through all that again." J. Mortimer, *Rumpole à la Carte*, 80 (1990).

Nor do we.

Reversed and remanded.

GARDNER and SHAW, JJ., concur.

