561 S.E.2d 606

**Moscoe RHODES, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 25431.**

Supreme Court of South Carolina.

Submitted Feb. 21, 2002.
Decided March 25, 2002.

26

Assistant Appellate Defender Robert M. Pachak, of South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Deputy Attorney General Donald J. Zelenka, Assistant Deputy Attorney General Allen Bullard, and Assistant Attorney General Douglas E. Leadbitter, of Columbia, for respondent.

ON WRIT OF CERTIORARI.

Justice WALLER:

We granted a writ of certiorari to review the post-conviction relief court's denial of relief to petitioner Moscoe Rhodes. We affirm.

## FACTS

Petitioner was convicted of two counts of assault and battery with intent to kill (ABIK), and one count each of: attempted armed robbery, possession of a weapon during a violent crime, possession of a pistol by a person under 21, giving false information to a law enforcement officer, and

resisting arrest. The trial court sentenced him to two consecutive 20–year terms of imprisonment for the ABIK convictions; for the remaining counts, petitioner received concurrent sentences of 20 years, five years, one year, three months, and one year, respectively. The Court of Appeals affirmed on direct appeal. *State v. Rhodes*, Op. No. 96–UP–240 (S.C. Ct.App. filed July 30, 1996). Petitioner thereafter filed for post-conviction relief (PCR), which the PCR court denied.

The majority of the charges stem from a shooting which occurred at a mobile home park on Saturday night, February 19, 1994. Victim Horace Cook was driving in the park looking for a party at a friend's house; victim Kendra Wilson was riding in the passenger seat, while another friend, Tonya Shannon, was in the back seat. Upon arriving where they thought the party was going to be, they discovered the party had moved to a motel. Cook began to drive out when they saw a group of guys.[1] Thinking they might be coming from the party, Cook asked the group where the party was. One member of the group, whom Cook later identified as petitioner, approached Cook and addressed him by name. As petitioner and Cook spoke, some of the other guys were talking to Shannon in the backseat. Cook testified that petitioner then walked off and dug a pistol out of his pants. Cook "threw the car in drive" while petitioner ran up to the driver's side window, said "Give me all your shit," and then fired into the car. Cook only heard one shot, but Wilson testified she heard three shots. Cook was not injured; however, Wilson was shot in both her legs and one of her hands.

The day after the shooting, Cook spoke with his friend, Tracy Thompson. Thompson testified that he had heard petitioner was involved with the shooting. On direct examination, Thompson testified as follows:

Well, when I found out what happened—I have several yearbooks and the name—I hear a lot of stuff. Some's true. Some's not. I didn't know if it was true or not but [Cook] being my friend I told him what I heard and I had a bunch of yearbooks, showed him pictures—well, I gave him the yearbooks and told him to look through them.

---

1. Cook described the group as being comprised of eight black teen-age males.

Q. ... You also provided a name?

A. Yes, I did.

Q. Okay.

A. That I heard.

Q. But—

A. But I told him—when I told him the name—I told him that I wasn't sure whether it was him or not. That's just what I heard.

Petitioner's counsel made no objection to Thompson's testimony. On cross-examination, counsel asked:

Q. What you actually in fact heard was a grapevine rumor that [petitioner] may have been involved in a shooting of a guy and a girl, isn't it?

A. Like I said I hear a lot of stuff. Some's true. Some's not.

Both Cook and Thompson testified that after Thompson gave Cook petitioner's name, Cook looked up petitioner in the middle-school yearbook Thompson had provided and identified petitioner as the person who shot at him. Cook stated that the giving of the name did not influence him, but it was the picture which caused him to identify petitioner as his assailant.

Cook brought the yearbook to Investigator Richard Nelson who had been assigned to the case. Investigator Nelson testified that Cook told him he had identified petitioner from the yearbook based on what someone had heard and then communicated to Cook. Petitioner's counsel did not object. Based on Cook's identification, Investigator Nelson had petitioner arrested. Investigator Nelson used a photograph taken of petitioner after his arrest as part of a photographic line-up. Both Wilson and Cook, at separate times, identified petitioner from this line-up.[2] Wilson testified that Cook told her he had seen petitioner's picture in a yearbook, but that Cook never showed her the yearbook.

Petitioner presented an alibi defense. During closing argument, petitioner's counsel argued that the entire case boiled

---

**2.** Petitioner's counsel challenged these identifications prior to trial. After a hearing, the trial court ruled the identifications admissible. During the trial, counsel consistently attacked the identifications made by the victims and the suggestiveness of the line-up.

down to identity since no physical evidence linked petitioner to the shooting. He stressed that Cook's identification stemmed solely from a rumor "picked up off the street." Regarding Thompson's testimony, counsel argued: "He hears so much stuff out there and a lot of it is untrue. If [petitioner] is convicted that's the real basis for him being convicted. That's the genesis of all this is that rumor. That can't be avoided. That can't be allowed. There is reasonable doubt." Finally, counsel asked the jury to not "send a man away on rumor and innuendo."

At the PCR hearing, petitioner alleged that counsel should have objected to the testimony that Thompson had heard it was petitioner who committed these crimes. Counsel, however, testified that he did not believe this testimony constituted hearsay. Moreover, counsel stated that when he cross-examined Thompson and characterized what Thompson had heard as rumor, his intent was to "plant seeds in the jury's mind that they didn't want to convict someone and send them to prison on a rumor."

As to this issue, the PCR court held counsel was not ineffective and that even if counsel could be considered ineffective for failing to object, there was no prejudice to petitioner.

## ISSUE

Did the PCR court err in finding counsel was not ineffective?

## DISCUSSION

Petitioner argues counsel was ineffective for failing to object to testimony that Thompson had heard petitioner was responsible for the shooting. He contends this testimony was improper hearsay and served to bolster the victims' identifications.

To establish a claim of ineffective assistance of trial counsel, a PCR applicant must show that: (1) counsel's representation fell below an objective standard of reasonableness and, (2) but for counsel's errors, there is a reasonable probability the result at trial would have been different. *Strickland*

*v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Johnson v. State,* 325 S.C. 182, 480 S.E.2d 733 (1997). A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial. *Id.*

 We find that the testimony admitted in this case about Thompson hearing petitioner was the shooter does not constitute hearsay. The rule against hearsay prohibits the admission of an out-of-court statement to prove the truth of the matter asserted. *E.g., Dawkins v. State,* 346 S.C. 151, 551 S.E.2d 260 (2001). Here, it was repeatedly made clear during trial that the information Thompson had heard was "from the street," i.e., a "rumor." [3] It was not offered to prove that petitioner had committed the crimes, but rather to explain Cook's identification of petitioner in the yearbook. This in turn led to petitioner's apprehension and the subsequent identification of him by both victims via the photographic lineup.

Petitioner cites *State v. Pollard,* 260 S.C. 457, 196 S.E.2d 839 (1973), in support of his argument. *Pollard* was an armed robbery case and, like the instant case, involved identification of the defendant by the victim as the central issue. In *Pollard,* the investigating officer was permitted to testify that he signed the arrest warrant for Pollard " 'from information received in the investigation' of the case" and that this information did not come from the victim. *Id.* at 459–60, 196 S.E.2d at 840. The Court held that this testimony was "clearly hearsay and inadmissible." *Id.* at 460, 196 S.E.2d at 840. The Court explained that the "only effect of the questioned testimony of the officer was to bolster the identification of appellant by conveying to the mind of the jury that there were others who connected appellant with the crime" and that Pollard had therefore been prejudiced by the denial of his right of confrontation. *Id.* at 461, 196 S.E.2d at 840.

While *Pollard* appears to be applicable on the facts, this Court expressly abrogated *Pollard* in *German v. State,* 325 S.C. 25, 478 S.E.2d 687 (1996). In *German,* the petitioner had been convicted of possession with intent to distribute crack cocaine. At trial, the undercover agent testified he had re-

---

3. Thompson himself acknowledged that he heard "a lot of stuff. Some's true. Some's not."

ceived several tips that the petitioner was distributing or selling crack cocaine. We held counsel was ineffective for failing to request a curative instruction when her hearsay objection to the agent's testimony was sustained and for failing to object to related statements made by the solicitor in his opening statement. Because the statements specifically referred to petitioner, and not to drug activity in general, we found them objectionable. *Id.* at 27, 478 S.E.2d at 688.[4] Specifically, we stated in *German* that trial counsel "should have objected to these statements as improper comments **on petitioner's character** and her failure to do so prejudiced appellant." *Id.* at 28, 478 S.E.2d at 688 (emphasis added). We explained that *Pollard,* as well as a Court of Appeals case relying on *Pollard,*[5] "were incorrectly decided. The statements were not objectionable as hearsay. However, they were objectionable as improper comments on the defendant's character." *Id.* at 28 n. 2, 478 S.E.2d at 688 n. 2.

■ Thus, in the instant case, petitioner's hearsay argument and his reliance on *Pollard* do not help him because he did not argue to the PCR court that counsel was ineffective for failing to object to this testimony on the basis of improper character evidence. *See id.; see also State v. Jones* 343 S.C. 562, 575, 541 S.E.2d 813, 820 (2001) (where the Court, relying on *German,* stated that the "identification of an individual as the suspect of a criminal investigation, based upon speculation and effectively calling into question that individual's character is" inadmissible). Any argument based on the reasoning of *German* is clearly unpreserved for this Court's review. *Plyler v. State,* 309 S.C. 408, 424 S.E.2d 477 (1992) (an issue which was neither raised at the PCR hearing nor ruled upon by the PCR court is procedurally barred); *Hyman v. State,* 278 S.C. 501, 299 S.E.2d 330 (1983) (same).

■ However, even assuming we could construe petitioner's ineffectiveness argument as one based on character pursuant to *German,* we find the PCR court correctly denied relief.

---

4. In contrast, evidence that police began an investigation because of generalized reports of criminal activity is admissible pursuant to *State v. Brown,* 317 S.C. 55, 451 S.E.2d 888 (1994).

5. *State v. Dennison,* 305 S.C. 161, 406 S.E.2d 383 (Ct.App.1991).

Counsel stated at the PCR hearing he purposely sought to convert this evidence to petitioner's advantage by portraying it as rumor. He brought this out in his cross-examination of Thompson and based much of his closing argument on the idea that the victims' identifications stemmed purely from rumor and innuendo. Where counsel articulates a valid reason for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel. *E.g., Stokes v. State*, 308 S.C. 546, 419 S.E.2d 778 (1992). In our opinion, counsel articulated an objectively reasonable strategy for his failure to object to this testimony. Indeed, it appears this was the only real strength in petitioner's defense and that counsel effectively capitalized on this evidence.

Accordingly, we hold there is no merit to petitioner's argument that counsel was ineffective in this case.

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.