586 S.E.2d 562

David JACKSON, Jr., Respondent,

v.

STATE of South Carolina, Petitioner.

No. 25678.

Supreme Court of South Carolina.

Submitted May 29, 2003.

Decided July 21, 2003.

Rehearing Denied Oct. 2, 2003.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Deputy Attorney General Donald Zelenka, and Assistant Attorney General Douglas E. Leadbitter, all of Columbia, for petitioner.

J. Falkner Wilkes, of Meglic & Wilkes, LLC, of Greenville, for respondent.

570

Justice BURNETT.

Respondent David Jackson, Jr., (Jackson) was convicted of murder and sentenced to life imprisonment. Concluding trial counsel rendered ineffective assistance of counsel by failing to request a self-defense charge, the post-conviction relief (PCR) judge granted Jackson's PCR application. We reverse.

## ISSUE

Did the PCR judge err by concluding trial counsel rendered ineffective assistance of counsel by failing to request a self-defense charge?

## ANALYSIS

To establish a claim of ineffective assistance of counsel, the PCR applicant must·establish that trial counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, there is a reasonable probability the result would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of trial. *Id.* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. The PCR judge's findings will be upheld by this Court when they are supported by any competent evidence in the record. *Cherry v. State,* 300 S.C. 115, 386 S.E.2d 624 (1989). However, the Court will not uphold the findings of the PCR court if no probative evidence supports those findings. *Holland v. State,* 322 S.C. 111, 470 S.E.2d 378 (1996).

### A.

The State contends the PCR judge erred by concluding trial counsel was ineffective because he did not request a charge on self-defense. It claims Jackson was not entitled to a self-defense charge because 1) Jackson was at fault in bringing on the difficulty and a reasonably prudent person would not have believed he was in danger of losing his life and 2) Jackson and the victim were engaged in mutual combat. We disagree.

A defendant is entitled to a self-defense charge if there is evidence establishing: (1) he was without fault in bringing

on the difficulty; (2) he believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) he had no means of avoiding the danger; and (4) that a reasonably prudent person of ordinary firmness and courage would have entertained the same belief about the danger. *State v. Bruno*, 322 S.C. 534, 473 S.E.2d 450 (1996).

Mutual combat exists when there is "mutual intent and willingness to fight." *State v. Graham*, 260 S.C. 449, 450, 196 S.E.2d 495 (1973). Mutual intent is "manifested by the acts and conduct of the parties and the circumstances attending and leading up to the combat." *Id.* Mutual combat bars a claim of self-defense because it negates the element of "not being at fault." *Id.*

At trial, Jackson's father (Father) testified Jackson drove Thomasina Smith (Smith) to the home the two men shared. Jackson and Smith went into Jackson's bedroom with their four month old baby. Father testified he heard Jackson and Smith "scrapping back there, fighting or whatever." Jackson ran out of the bedroom. While carrying a gun, Smith chased Jackson, shouting profanities. Jackson and Smith ran outside. Between one and two hours later, Jackson returned inside. Father did not know where Smith had gone.

Jackson testified, on the night of the shooting, he told Smith he intended to change jobs and wanted his family to see the baby more often. Smith "got hot-tempered about it." Smith strangled and beat Jackson; Jackson was able to get away. He ran outside and attempted to get into the garage, but found it locked. He stated when he headed back down the garage steps, Smith fired a shot at him. He and Smith ran into each other, fell down the garage steps, wrestled, and he managed to get the gun from her. Jackson stated he "guess I fell back and was—was firing." He testified the "gun just went off." He explained the semiautomatic 25–caliber weapon, owned by Smith, had an "easy" or "hairy" [sic] trigger. Jackson agreed the line of fire would have been slightly upward.

Jackson testified Smith was still alive and he was able to get her into the car. He intended to take her to the hospital. Jackson stated he panicked when he realized Smith was no longer moving. On cross-examination, Jackson admitted

dumping Smith's body in a ditch on the side of the road approximately one-quarter of a mile from his home.

Jackson testified, in general, Smith was "more quick-tempered than anything and she would jump on me basically." When she "jumped on" Jackson, he believed she was "aiming to hurt [him]" and he would run. Jackson testified Smith was heavier and stronger than himself.

Jackson was entitled to a self-defense charge. Contrary to the State's claim, Jackson presented evidence he was not at fault in bringing on the difficulty. According to Jackson's testimony, Smith physically attacked him after he told her he intended to change jobs and wanted his family to have the opportunity to see the baby more often. Furthermore, a reasonably prudent person would have believed he was in danger of losing his life or sustaining seriously bodily injury when being chased by an individual who had just attempted to strangle and beat him and had shot at him with a gun.

Moreover, Jackson and Smith were not engaged in mutual combat. According to Jackson, he and Smith did not have a mutual willingness to fight but, rather, Smith was angry with Jackson's decision to change jobs and his request that his family have a greater opportunity to see the baby and she physically attacked him. *State v. Taylor,* —— S.C. ——, —— S.E.2d ——, 2003 WL 21361067 (2003) (mutual combat is triggered when both parties contribute to the resulting fight). Jackson and Smith were not engaged in mutual combat.

The evidence supports the PCR judge's conclusion trial counsel provided deficient representation by failing to request a charge on self-defense. *Cherry v. State, supra.*

### B.

The State contends Jackson was not prejudiced by trial counsel's failure to request a self-defense charge. We agree.

In *Ford v. State,* 314 S.C. 245, 442 S.E.2d 604 (1994), the Court found that, while trial counsel provided deficient representation by failing to request an alibi charge, the PCR applicant was not prejudiced because, in light of the overwhelming evidence, there was not a reasonable probability that, had the charge been given, the outcome of trial would

have been different. Similarly, in *Battle v. State*, 305 S.C. 460, 409 S.E.2d 400 (1991), the Court suggested that prejudice does not automatically result from the conclusion that trial counsel provided deficient performance by failing to request a particular charge. *See also Stone v. State*, 294 S.C. 286, 288, 363 S.E.2d 903, 904 (1988) ("because the State's case rested primarily on the testimony of the victim and police officers, [PCR applicant] was prejudiced by counsel's failure to request [self-defense] instruction.").

Our confidence in the outcome of Jackson's trial is not undermined by his failure to receive a self-defense charge. Jackson's testimony was unsupported by the physical evidence and highly incredible.

First, Smith had been shot six times, once in the back. At least four of the gunshot wounds were made from a downward angle, contrary to Jackson's statement he fired the gun in an upward angle. Furthermore, contrary to Jackson's testimony, forensic tests revealed Smith had no gunshot residue on her hands, indicating she had not fired a gun before her death.

Second, while the twenty-five caliber handgun was not recovered, ammunition and a magazine for a twenty-five caliber handgun were recovered from Jackson's bedroom. Jackson testified he did not know what happened to the weapon he used to shoot Smith.

Third, Jackson gave inconsistent statements and testified he did not remember noteworthy events. For instance, Jackson initially told the police he and Smith had a verbal argument and she walked away. He also testified he did not recall Smith's mother and sister coming to his home and inquiring as to Smith's whereabouts shortly after the shooting. He stated he did not remember the encounter even though Smith's sister physically knocked him to the ground.

Accordingly, while Jackson would have been entitled to a self-defense charge, we conclude the instruction would not have affected the outcome of trial due to the overwhelming evidence of Jackson's guilt.[1] Since the PCR judge's order is

---

1. The jury rejected the involuntary manslaughter charge.

not supported by competent evidence, we reverse. *Holland v. State, supra.*

**REVERSED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.