THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Scottie Robinson, Appellant.
 
 
 

Appeal From Horry County
 Paula H. Thomas, Circuit Court Judge

Unpublished Opinion No. 2006-UP-390
Submitted November 1, 2006  Filed December 5, 2006

AFFIRMED

 
 
 
Acting Chief Attorney Joseph L. Savitz III, of Columbia, for Appellant
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, of Columbia; John Gregory Hembree, of Conway, for Respondent.
 
 
 

PER CURIAM:  Scottie Robinson appeals his murder conviction.  He argues the trial court erred in refusing to charge the jury on self-defense.  We affirm.[1]
FACTS
On September 30, 2001, Aaron Robinson was playing basketball with several other men, including Anthony Bradley, at the Smith Jones Recreation Center (the Center) in Conway, South Carolina.  During the basketball game, Robinson and Bradley argued and engaged in a scuffle wherein Bradley grabbed Robinson by the throat and shoved him.  After the two men were separated, Robinson went to his car and drove home.  
At some point after the incident, Scottie Robinson (Appellant), Aaron Robinsons older brother, became aware that an incident had occurred between his brother and another man at the Center.[2]  Appellant picked up his cousin Theartis Robinson and drove to the Center.  Upon arriving at the Center, Appellant retrieved a handgun from the glove compartment of his vehicle, and he and his cousin approached the men on the basketball court.[3]  Bradley attempted to grab the gun from Appellant, and during the struggle, Appellant fatally shot Bradley in the chest.  Immediately following the shooting, Appellant walked back to his car and drove home.    
An Horry County grand jury indicted Appellant for murder.  At trial, the jury convicted Appellant on all charges, and the trial court sentenced him to thirty years imprisonment.  This appeal followed.   
STANDARD OF REVIEW
An appellate court will not reverse the trial judges decision regarding
jury charges absent an abuse of discretion.  Clark v. Cantrell, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000).  An abuse of discretion occurs when the trial courts ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support.  Id.  If any evidence exists to support a
jury charge, the trial judge should grant the requested charge.  State v. Burriss, 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999).  A refusal to grant a requested
jury charge which states a sound principle of law applicable to the case at hand is an error of law.  Clark, 339 S.C. at 390, 529 S.E.2d at 539.   A self-defense jury charge is required only when the evidence presented at trial supports such a charge.  State v. Goodson, 312 S.C. 278, 280, 440 S.E.2d 370, 372 (1994).
LAW/ANALYSIS
Appellant contends the trial court erred in denying his request to charge the jury on self-defense.  We disagree.
A defendant is entitled to a self-defense charge only when the following four elements can be established: (1) the defendant was without fault in bringing
on the difficulty; (2) the defendant believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) the defendant had no means of avoiding the danger and was thereby forced to act as he did; and (4) that a reasonably prudent person of ordinary firmness and courage in a similar situation would have entertained the same belief about the danger. 
Jackson v. State, 355 S.C. 568, 570-71, 586 S.E.2d 562, 563 (2003).
In this matter, the record fails to establish the necessary elements for a charge of self-defense.  There is no evidence in the record to support the notion that Appellant was without fault in bringing about the difficulty.  Appellant testified that his intentions in driving to the Center were to confront Bradley and tell him to leave his brother alone.  It is undisputed that Appellant, while holding a gun, approached Bradley on the basketball court.  In fact, Appellant testified that Bradley specifically instructed him not to come onto the court with the gun.  The fact that a struggle over the gun ensued does not allow Appellant to claim self-defense.  [O]ne who provokes or initiates an assault cannot escape criminal
liability by invoking self-defense.  State v. Slater, 360 S.C. 487, 491, 602 S.E.2d 90, 92-93 (Ct. App. 2004).  
Further, even if appellant reasonably believed he was in imminent danger of losing his life or sustaining serious bodily injury,[4] he certainly had means to avoid the danger.  Appellant testified that upon his arriving at the Center, Bradley immediately began yelling violent words at him.  Yet, despite his ability to simply return to his vehicle and leave, Appellant retrieved his gun and approached Bradley on the basketball court.  When asked why he did not simply leave the Center, Appellant testified I dont know how to answer that.   
Neither the first nor the third prongs of self-defense have raised questions of fact for the jury.  As a matter of law, these required elements have not been established.  Because the record demonstrates as a matter of law the absence of at least one element of self-defense, the trial judge did not err in refusing to charge self-defense.  State v. Santiago, 370 S.C. 153, ___, 634 S.E.2d 23, 28  (Ct. App. 2006).

 CONCLUSION
We find no error by the trial court in refusing to charge the jury on self-defense.  Based on the foregoing, Appellants conviction is
 AFFIRMED.
GOOLSBY, STILWELL, and SHORT, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] Both Appellant and Aaron Robinson testified that they did not speak with each other following the incident at the recreation center.  Therefore, neither the manner in which Appellant came to learn of the events, nor the exact details of which he was made aware are entirely clear.  It appears Appellant overheard some neighbors discussing the incident. 
[3] Although through conflicting accounts, all parties agree that through a verbal exchange, Appellant became aware that Bradley was the individual who had tussled with his brother.  Appellant testified that Bradley immediately began screaming at him, and other witnesses testified that Appellant asked who was messing with his brother, and Bradley responded it was me.  
[4] Bradley had a reputation in the community for being a tough guy and had participated in several professional boxing matches.