670 S.E.2d 646

Anthony M. **LOUNDS**, Petitioner,

v.

**STATE of South Carolina, Respondent.**

**No. 26571.**

Supreme Court of South Carolina.

Submitted Oct. 22, 2008.
Decided Dec. 15, 2008.

456

Appellate Defender LaNelle C. DuRant, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Karen Ratigan, all of Columbia, for Respondents.

Justice WALLER:

In this post-conviction relief (PCR) case, we granted certiorari to review the PCR court's denial of relief to petitioner, Anthony M. Lounds. We reverse and remand for a new trial.

## FACTS

Petitioner was indicted for armed robbery and kidnapping. A jury found petitioner not guilty of armed robbery but convicted him on the kidnapping charge. He was sentenced to life without parole (LWOP).

At trial, Todd Garrett testified that on February 18, 2000, petitioner entered his warehouse in Greenville County and inquired about a job. When Garrett replied that petitioner would have to submit an application at the company's office located a few blocks away, petitioner "stepped a little bit closer and pulled a gun out of his left hand pocket, kept it to his side and said, give me your money." Garrett stated he only had a couple of dollars in his wallet. Another man who had been standing in the doorway approached, and helped petitioner pat Garrett down. Garrett testified that petitioner asked where the rest of the money was, and he said he had a little bit in a bank account. According to Garrett, petitioner and the other man pulled him up, and led him out of the warehouse to Garrett's truck.

Garrett testified that once in his truck, petitioner found a knife and held it to his neck while the other man drove the truck. After Garrett told them he did not have an ATM card and would have to go into the bank, Garrett then suggested they could go to his parents' house to find some money there. Garrett explained that he believed his life was in danger if he did not "get them something."

After parking the truck in his parents' driveway, Garrett, petitioner, and the other man exited the truck. Garrett advised the other man that the keys to the house were on the keychain left in the truck. When the man went back to retrieve the keys, Garrett punched petitioner in the face and ran away. He noticed that the men had gotten back into his truck and were coming back after him. Once Garrett made it to a store, he called police and reported the incident.

The police officer left after taking Garrett's statement. Garrett testified that he and his father decided to "ride through the neighborhoods" to find the perpetrators or his truck. They located the truck and told police its location. The truck was impounded and a forensic investigation revealed a fingerprint on the rearview mirror that matched petitioner. Garrett identified petitioner from a photo line-up and then again at trial. Garrett testified he had never seen petitioner before the day of the incident.

Petitioner testified in his own defense and related a much different account. According to petitioner, Garrett had bought crack cocaine from him on several occasions from 1999 to 2000, and Garrett owed petitioner about five hundred fifty dollars in connection with the drug deals. Petitioner testified that he went to Garrett's place of business on February 18, 2000, and asked for his money. Petitioner stated he did not have a gun, he did not threaten Garrett in any way, and he was not looking for any trouble. When pressed on whether he had a weapon, petitioner stated that he did not need a weapon since "there was [sic] two people."

Petitioner further explained that Garrett "volunteered to go to his people's home" to get some money. According to petitioner, it was Garrett who drove the truck, and when he stopped it, he "got out and took off running." Petitioner took the truck back to Garrett's warehouse and suggested that Garrett had moved the truck to the location where police found it. The following colloquy then took place:

Q. You did not commit this crime here?

A. No, sir, I didn't. If anything you can find me guilty of is taking his truck. I did that. You know what I'm saying? I had to get back to my location. That's how my fingerprint got on that window.

Q. All right. And you don't make money by robbing people? You sell drugs?

A. Yes, Sir. Got various drug charges to prove it.

On reply, the State recalled Garrett who denied ever buying or using crack cocaine.

During deliberations, the jury returned to the courtroom with a request for a recharge on kidnapping. A few hours

later, the jury again returned with a request to rehear petitioner's testimony in full. Ultimately, the jury reached its verdict of not guilty on the armed robbery charge, but guilty on the kidnapping charge. Because of a prior conviction, the trial court sentenced petitioner to LWOP.[1]

Petitioner directly appealed, but the Court of Appeals dismissed the appeal. *State v. Lounds,* Op. No.2003–UP–408 (S.C. Ct.App. filed June 18, 2003).

Thereafter, petitioner filed for PCR. Petitioner raised several issues at the hearing, including that trial counsel was ineffective for failing to investigate and prepare for trial, and for making improper comments during closing argument. The PCR court denied relief and also subsequently denied petitioner's motion to alter or amend the judgment.

## ISSUES

1. Did the PCR court err in failing to find counsel ineffective for inadequate preparation?
2. Did the PCR erroneously find that counsel's closing argument comments were not improper?

## DISCUSSION

 In order to prove counsel was ineffective, the PCR applicant must show: (1) counsel's performance was deficient; and (2) there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Rhodes v. State,* 349 S.C. 25, 561 S.E.2d 606 (2002). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Moreover, "when a defendant's conviction is challenged, 'the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'" *Ard v. Catoe,* 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007) (quoting *Strickland v. Washington,* 466 U.S. at 695, 104 S.Ct. 2052).

---

1. Petitioner was convicted of voluntary manslaughter in 1995. He was sentenced to 15 years imprisonment, suspended on the service of seven years and five years probation.

 In a PCR proceeding, the burden is on the applicant to prove the allegations in his application. *E.g., Bannister v. State,* 333 S.C. 298, 509 S.E.2d 807 (1998). This Court will uphold the findings of the PCR court if there is any evidence of probative value to support them. *Cherry v. State,* 300 S.C. 115, 386 S.E.2d 624 (1989). However, if no probative evidence supports these findings, the Court will not uphold the findings of the PCR court. *Jackson v. State,* 355 S.C. 568, 570, 586 S.E.2d 562, 563 (2003). Furthermore, this Court will reverse the PCR court's decision when it is controlled by an error of law. *Pierce v. State,* 338 S.C. 139, 145, 526 S.E.2d 222, 225 (2000).

### 1. Inadequate preparation

 Petitioner argues that trial counsel was ineffective for failing to adequately prepare for petitioner's trial, especially given the fact that counsel had ample notice this was an LWOP case. We agree.

 A criminal defense attorney has a duty to perform a reasonable investigation. *Ard v. Catoe,* 372 S.C. at 331, 642 S.E.2d at 597. "[W]hile the scope of a reasonable investigation depends upon a number of issues, at a minimum, counsel has the duty to interview potential witnesses and to make an **independent** investigation of the facts and circumstances of the case." *Id.* at 331–32, 642 S.E.2d at 597 (internal quotes and citation omitted).

Petitioner's trial took place on December 4–5, 2001. At the outset, trial counsel Greg Newell informed the court that petitioner's family was "supposed to bring several witnesses with them" for petitioner. Counsel then requested a continuance because he had "found out the names of these people **just this morning**" and therefore had not had a chance to subpoena them. (emphasis added).

Newell discussed witnesses for the defense a few other times during trial. After a pretrial hearing, Newell advised the trial court there were two witnesses who would be arriving in the afternoon, but two others who were "not available." Newell offered his opinion that the unavailable witnesses would not "add much" to petitioner's case, although he informed the trial court that the witnesses would be able to

connect Garrett with petitioner through drug dealing. Later that afternoon, counsel requested assistance to locate a witness named Elaine Sara Hawkins who was in detention. Hawkins, however, was unable to be located either that day or the following day. Newell told the court that he had spoken to the two other witnesses, but contended they would not "add that much" to the case. As a result, petitioner was the sole defense witness.

According to the State, both petitioner and Newell had been served written notice of the State's intent to seek an LWOP sentence on May 3, 2001. Additionally, Newell was served again with notice on October 18, 2001. Therefore, Newell had several months' notice petitioner was facing a LWOP sentence if convicted.

At the PCR hearing, petitioner testified that Newell had not done anything to investigate his case. Significantly, petitioner stated Newell had met with him only once—**on the morning of trial.** Although Newell had represented petitioner in a probation violation matter in August 2001, petitioner testified Newell never discussed the armed robbery and kidnapping charges at all. Petitioner further explained that on the morning of trial, he gave Newell the names of witnesses who could identify Garrett as someone with whom he had dealt. Petitioner said Newell showed him some discovery that morning, but Newell did not discuss the file; he simply asked petitioner to look it over and if petitioner saw anything, to let him know.

Petitioner presented two other witnesses at the PCR hearing. George Lounds, petitioner's brother, testified that Garrett and petitioner bought and used drugs together. George stated that Newell spoke to him before trial, and said he would get back to him, but George never heard back from Newell. According to George, if Newell had called him to the stand, he would have testified about the connection between Garrett and petitioner. Moreover, George stated he was surprised when he learned that petitioner had been charged with robbing and kidnapping Garrett because the two of them were "always together" hanging out and smoking together at a crack house.

Preston Lounds, petitioner's nephew, testified that he had seen Garrett purchase drugs and had also seen petitioner and

Garrett together **in Garrett's truck.** Preston further testified he was at the courthouse during petitioner's trial, but Newell never spoke to him.

Newell did not testify at the PCR hearing. The State attempted to subpoena Newell for the PCR hearing, but was unable to successfully serve him.[2]

The PCR court found that "trial counsel adequately conferred with [petitioner], conducted a proper investigation, and was competent in his representation." The PCR court suggested that because Newell told the trial court the witnesses would not "add anything to the defense case," it was a strategic reason to not call the witnesses. Moreover, the PCR court found it unlikely that George and Preston's testimony "would have overcome the victim's testimony at trial."

We find there is no probative evidence to support the PCR court's findings on this issue.

■ We have recognized that when counsel articulates a **valid** reason for employing a certain strategy, such conduct generally will not be deemed ineffective assistance of counsel. *Ingle v. State,* 348 S.C. 467, 560 S.E.2d 401 (2002); *Stokes v. State,* 308 S.C. 546, 419 S.E.2d 778 (1992). The validity of counsel's strategy is reviewed under "an objective standard of reasonableness." *Ingle,* 348 S.C. at 470, 560 S.E.2d at 402.

In the instant case, however, Newell did not articulate a strategy because he did not testify at the PCR hearing. Although Newell did state to the trial court he believed the witnesses would not add much to petitioner's defense, we find this was not objectively reasonable given the defense theory of the case. The only defense Newell presented to the jury was that petitioner and Garrett knew each other through drug dealing. If witnesses other than petitioner were willing to testify to this fact, certainly that would have added significantly to the credibility of petitioner's case. Thus, we find the PCR court erred in finding that Newell offered an objectively valid strategic reason not to call these witnesses.

---

2. We note that the PCR hearing was held in 2004. In 2002, Newell was definitely suspended for nine months. *See In re Newell,* 349 S.C. 40, 562 S.E.2d 308 (2002). Newell was again suspended in 2003 for failure to comply with CLE requirements. It appears Newell currently remains suspended from the practice of law.

Furthermore, both the trial transcript and petitioner's PCR testimony inescapably point to the conclusion that Newell simply had not adequately prepared the defense case. Newell himself admitted to the trial court he had only learned of defense witnesses that morning, and therefore they had neither been interviewed nor subpoenaed. Petitioner corroborated this at the PCR hearing when he stated Newell had only spoken to him about the case on the morning of trial.

We hold the evidence clearly shows that Newell inadequately prepared for trial. *See Ard v. Catoe, supra* (at a minimum, counsel has the duty to interview potential witnesses). This was unreasonable in light of the fact that Newell had several months' notice that petitioner was facing LWOP if convicted. Therefore, we find counsel deficient in this regard.

■ As to the prejudice resulting from counsel's deficient performance, we believe petitioner clearly was prejudiced by Newell's failure to subpoena and call witnesses who would have supported petitioner's own testimony at trial. With its not-guilty verdict on the armed robbery charge, the jury necessarily rejected several aspects of Garrett's account, and accepted as true certain parts of petitioner's testimony. Moreover, the jury's questions during deliberations indicate it also struggled with whether petitioner was guilty of kidnapping. Thus, we find that if additional witnesses had confirmed petitioner's testimony, there is a reasonable likelihood the result of the trial would have been different on the kidnapping count. *Strickland v. Washington, supra.*

Accordingly, the PCR court erred in not finding ineffective assistance of counsel on this issue. *See Jackson v. State, supra* (if no probative evidence supports the PCR court's findings, this Court will not uphold the findings of the PCR court) *Pierce v. State, supra* (the PCR court's decision will be reversed when it is controlled by an error of law).

### 2. Counsel's closing argument comments

■ Petitioner also argues the PCR court erred in not finding counsel ineffective for certain comments made during closing argument. We agree.

During closing argument, Newell essentially tried to point out the inconsistencies and improbabilities in Garrett's ac-

count. However, he also offered his own characterization of petitioner's testimony, as follows:

> But what it comes down to is two different stories . . .
>
> The victim told a story. And his story was that there was an armed robbery. And in the course of that armed robbery he was taken to his parents' home, let out, escaped, and then called the police. My client's story is, and he admitted, I deal drugs. I admit that I'm a criminal in that respect, but I did not do this armed robbery. I came there to collect some money I was owed. The guy had built up an account, I mean, and it was getting too big. And I wanted my money. **And I brought along a little muscle. . . . I brought along a little muscle with me. Two against one, hey, we're going to—we want our money. You owe us money. We want our money. A little bit of leaning, not necessarily beating him up.** But I'm standing there, two big guys, I need my money. Okay.

(Emphasis added).

At the PCR hearing, petitioner testified that Newell "repeatedly pounded his right fist into his left palm in a display of use of force to the jury." According to petitioner, Newell pounded his fist as he said, "I brought along a little muscle." Petitioner further maintained he told Newell that he did not rob or kidnap Garrett and had not threatened Garrett in any way; petitioner specifically denied he had told Newell he went with some "muscle." In addition, petitioner stated that Newell's comments, coupled with the fist-pounding, gave the jury the impression that petitioner used force, which is an element of kidnapping.[3]

The PCR court found that Newell's comments were not improper as he was "simply presenting to the jury an alternate explanation of events that was implied from [petitioner's] own testimony."

---

3. The trial court charged the jury that kidnapping has four elements: (1) intent (2) to take or carry away the victim (3) by force or threat of force (4) without the consent of the victim. Specifically as to the element of force, the trial court stated that force "can result from the threatened use of force by placing that person in fear of losing his life or suffering bodily harm."

In our opinion, there is no probative evidence to support the PCR court's findings on this issue. While Newell's comments were not an outright admission of kidnapping, they significantly departed from petitioner's own testimony which was that Garrett "volunteered to go to his people's home" to get some money. The pounding of Newell's fist into his palm only served to highlight the inference that petitioner and the other man had threatened the use of force. This form of argument did not advocate in petitioner's favor, but rather tended to support the State's theory on kidnapping. Therefore, we hold Newell's closing argument comments were improper and constituted deficient performance.

▮▮▮▮ We further find petitioner was prejudiced by Newell's closing argument. Both petitioner and Garrett testified that they went from the warehouse to Garrett's parents' home in the truck. Thus, the elements at issue were petitioner's intent, force, and the victim's consent. Petitioner's credibility was crucial as to these elements. The jury clearly struggled with whether petitioner was guilty of kidnapping as evidenced by its requests for a recharge on kidnapping and the replaying of petitioner's testimony. Yet, petitioner's own counsel damaged the defense case because the closing argument did not support petitioner's account of what had happened. *Cf. Ingle v. State*, 348 S.C. at 472, 560 S.E.2d at 403 (where defense counsel put up a witness who gave testimony contradictory to the petitioner's defense and was therefore "quite damaging" to the defense, the Court found ineffective assistance of counsel). In other words, we find there is a reasonable probability that, but for counsel's improper closing argument comments, the result of the trial would have been different. *Strickland v. Washington, supra.*

## CONCLUSION

The PCR court erred in not finding that counsel was ineffective. Accordingly, we reverse the denial of PCR and remand for a new trial.

**REVERSED AND REMANDED.**

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.